**In re Robert L. JENSEN and Martha S. Jensen, Petitioners.**

No. 90–5627.

United States Court of Appeals, Fifth Circuit.

Oct. 22, 1991.

Rudy Vasquez, San Antonio, Tex., for petitioners.

David S. Gragg, J. Vince Hightower, Jeffers, Brook, Kreager & Gragg, San Antonio, Tex., for Union Bank and Grant Hollingsworth.

Bruce Waitz, Waitz, Greer & Cennamo, San Antonio, Tex., for Carl Strating, Tres Tech Corp. and Charles Richardson.

Before JOLLY, HIGGINBOTHAM, and JONES, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

This petition for mandamus poses two questions regarding the Seventh Amendment right to trial by jury of all suits at common law. The first question is whether petitioners' claims are legal or equitable in nature. We find that under the Supreme Court's test in *Granfinanciera v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), at least some of petitioners' claims are properly considered legal in character and hence triable before a jury. We therefore must consider a second question: whether by filing a petition in bankruptcy, petitioners lost their Seventh Amendment right to a jury trial as to prepetition claims against third parties. We again look to the court's reasoning in *Granfinanciera* and conclude that because a petition in bankruptcy does not indicate that the debtor has submitted his pre-petition claims to the equitable jurisdiction of the bankruptcy court, the debtor does not lose his right to their trial by jury. We grant the writ.

## I.

Robert and Martha Jensen filed a Chapter 11 plan of reorganization in April of 1989. No trustee was appointed, and the Jensens remained debtors in possession. The Jensens' reorganization plan was confirmed in June and consummated in August of 1989, thereby discharging and reorganizing the Jensens' debts. The plan specifically reserved to the Jensens authority to prosecute extant claims of the estate, with any recovery to go to the creditors' fund.

Meanwhile, the Jensens were pursuing a law suit in Texas state court raising prepetition state law claims against Carl Strating, Tres Tech Corporation, Charles Richardson, Union Bank and Grant Hollingsworth. These claims stemmed from previous dealings regarding the development and marketing of Mr. Jensen's invention: the high frequency ventilator, designed to aid in the treatment of premature infants whose lungs have not fully developed. This state-court suit alleged breach of fiduciary duty, fraud, tortious interference with both a prospective contract and existing and prospective business relations, and conspiracy. In their prayer for relief, the Jensens requested actual damages, exemplary damages, and pre-judgment and post-judgment interest. They also sought a constructive trust and an accounting for profits. The state court petition was accompanied by a request for a jury and the required fee.

Defendants removed the state case to the bankruptcy court, which promptly denied remand to the state court for a jury trial. The bankruptcy court held that, by filing a petition under Chapter 11, the Jensens voluntarily subjected themselves to the jurisdiction of the bankruptcy court and thereby waived their right to jury trial of the state claims. The judge then scheduled a bench trial in bankruptcy court.

The Jensens petitioned for a writ of mandamus in the district court, which denied the petition on the ground that there was an adequate remedy on appeal and thus no entitlement to mandamus relief. The Jensens then petitioned this court for reinstatement of the jury demand and a remand for jury trial in state court.

With all respect to the able district court, we are persuaded that a writ of mandamus is an appropriate remedy to protect the valued right of trial by jury and to avoid costly, multiple trials. *See, e.g., Dairy Queen v. Wood*, 369 U.S. 469, 480, 82 S.Ct. 894, 901, 8 L.Ed.2d 44 (1962).

## II.

■ Relying primarily on *Granfinanciera v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989) and *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962), the Jensens argue that the Seventh Amendment secures their right to a jury trial because their state-law claims include at least some legal as opposed to equitable elements and because they seek monetary relief. We agree.

In *Granfinanciera*, the court described a two-part test for determining whether a claim is legal or equitable for purposes of the Seventh Amendment: "[f]irst, we compare the ... action to 18th-century actions brought in the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature." *Granfinanciera*, 492 U.S. at 42, 109 S.Ct. at 2790 (citing *Tull v. United States*, 481 U.S. 412, 417–18, 107 S.Ct. 1831, 1835, 95 L.Ed.2d 365 (1987)). The court also noted that "[t]he second stage of this analysis is more important than the first." *Id.* We then turn to the historical character of the Jensens' claims and the nature of relief they seek.

In comparing the Jensens' claims to 18th-century actions, it is apparent that although some of the claims were originally brought in courts of equity, others could be maintained in a court of law. Claims for breach of fiduciary duty have always been within the exclusive jurisdiction of the courts of equity. *Local No. 391 v. Terry*, 494 U.S. 558, 110 S.Ct. 1339, 1346, 108 L.Ed.2d 519 (1990) (citing 2 J. Story, *Commentaries on Equity Jurisprudence* § 960, at 266 (13th ed. 1886); and *Restatement (Second) of Trusts* § 199(c) (1959)). Tortious interference with contractual or business relations was not a generally recognized cause of action until the 1850's, long after the enactment of the Seventh Amendment. *Lumley v. Gye*, 2 El. & Bl. 216, 246, 118 Eng.Rep. 749, 760 (Q.B. 1853); *see also* Note, *Tortious Interference with Contractual Relations in the Nineteenth Century: The Transformation of Property, Contract, and Tort*, 93 Harv.L.Rev. 1510 (1980). However, it is analogous to certain causes of action that were brought in courts of law in the 18th century in order to protect contractual relationships from third-party interferences. For example, at common law, an action for "enticement" was available against a third party persuading a servant to leave his employment before the expiration of his term. *See, e.g., Keane v. Boycott*, 2 H.Bl. 511, 126 Eng.Rep. 676 (C.P. 1795); *Hart v. Aldridge*, 1 Cowp. 54, 98 Eng.Rep. 964 (K.B. 1774). Likewise, a civil action for conspiracy did not really emerge until the latter half of the nineteenth century. *See* W. Holdsworth, *A History of English Law*, Vol. VIII, at 392–97 (1925). Yet, civil conspiracy has its roots in criminal conspiracy, which was of course triable before a jury in a court of law. *Cf. Beacon Theatres v. Westover*, 359 U.S. 500, 512–13, 79 S.Ct. 948, 958, 3 L.Ed.2d 988 (1959) (Stewart, J., dissenting) (civil conspiracy cause of action clearly triable as of right by a jury). Finally, an action for fraud could be brought in either a court of law or a court of equity, depending on the circumstances of the case. *Sowerby v. Warder*, 2 Cox 267, 30 Eng.Rep. 124 (Ex. 1791); P. Devlin, *Jury Trial of Complex Cases: English Practice at the Time of the Seventh Amendment*, 80 Colum.L.Rev. 43, 55 (1980). At the first stage of the analysis we find, therefore, both historically legal and historically equitable elements in the Jensens' state court law suit. This is not surprising. Rather, it is illustrative of the predictably anemic explanatory power of the first inquiry, an

inability that itself accounts for the court's stress upon the second inquiry.

The next step, by *Granfinanciera* the more important step, is to determine whether the remedy the Jensens seek is equitable or legal. The Jensens argue that because they seek money damages, their claim is a legal one. They rely on *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 476, 82 S.Ct. 894, 899, 8 L.Ed.2d 44 (1962), in which the court agreed that "insofar as the complaint requests a money judgement it presents a claim which is unquestionably legal." Likewise *Granfinanciera* indicated that the monetary nature of the relief sought in that case strongly indicated that the claim should be denominated legal rather than equitable. 492 U.S. at 47, 109 S.Ct. at 2793.

Awards of monetary relief are for present purposes not without their ambiguities. The reality is that there may be situations in which an award of monetary relief is equitable.[1] Nonetheless, some of the damages in this case must be considered legal in character. The Jensens have requested actual damages for the defendants' tortious interference with their business relations and conspiracy to deprive them of their stake in Mr. Jensen's invention. The state court petition alleges *inter alia* that as a result of defendants' actions, Jensen did not receive a lucrative employment contract and that his stock in the research corporation he founded has been rendered worthless. These injuries are compensable by a monetary award. Such relief is legal in character.

Defendants contend, however, that because the Jensens seek an accounting and constructive trust to secure the future profits from Mr. Jensen's invention, their remedy is essentially equitable. It is undisputed that an accounting and a constructive trust are traditionally equitable remedies. *See generally* 5 J. Moore et al., *Moore's Federal Practice* ¶ 38.25 (2d ed. 1985). Furthermore, the Supreme Court has recognized that an action for disgorge-

ment of improper profits may be characterized as equitable. *Local No. 391,* 110 S.Ct. at 1348. Hence, the argument goes, even though the Jensens seek money damages, their suit may be tried in equity since they have requested an equitable form of relief and since some of the damages may be equitable.

There is support for defendants' position in *Granfinanciera,* since the court seemed to rely on the fact that the respondent had not requested an accounting or other specifically equitable form of relief in finding a jury entitlement. *Granfinanciera,* 492 U.S. at 49 n. 7, 109 S.Ct. at 2794 n. 7. However, we interpret this language in light of the court's decision in *Dairy Queen v. Wood,* 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962), in which the court explained that in order to maintain a suit for an equitable accounting on a claim cognizable at law, the plaintiff must show that the accounts between the parties are so complicated that only a court of equity could unravel them. 369 U.S. at 478, 82 S.Ct. at 900. In such cases, even though the underlying claim is legal in nature, there is no adequate remedy at law and the case is triable in equity. By qualifying its language in *Granfinanciera,* the court was only indicating that there was no need to address whether an adequate remedy at law existed because there was no request for equitable relief. The parties here do not contend, and we do not find, that a remedy at law would be an inadequate means of relief.

More significant is the fact that the court has repeatedly held that joinder of equitable claims with legal claims does not deprive a party of the right to a jury trial on the legal claims. *Curtis v. Loether,* 415 U.S. 189, 196 n. 11, 94 S.Ct. 1005, 1009 n. 11, 39 L.Ed.2d 260 (1974) ("If a legal claim is joined with an equitable claim, the right to a jury trial on the legal claim, including all issues common to both claims, remains intact."); *Beacon Theatres v. Westover,* 359 U.S. 500, 510, 79 S.Ct. 948, 956, 3

---

1. *See Local No. 391 v. Terry,* 110 S.Ct. at 1347–48; *Curtis v. Loether,* 415 U.S. 189, 196, 94 S.Ct. 1005, 1009, 39 L.Ed.2d 260 (1973).

L.Ed.2d 988 (1959) ("This jury right cannot be dispensed with, except by the assent of the parties entitled to it, nor can it be impaired by any blending with a claim, properly cognizable at law, of a demand for equitable relief in aid of the legal action or during its pendency.") Thus it has long been the rule that legal issues remain triable by jury even though accompanied by a request for an accounting. *Dairy Queen v. Wood,* 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962); *Swofford v. B & W, Inc.,* 336 F.2d 406 (5th Cir.1964), *cert. denied,* 379 U.S. 962, 85 S.Ct. 653, 13 L.Ed.2d 557 (1965); 5 J. Moore et al., *Moore's Federal Practice* ¶ 38.25 (2d ed. 1985). In this case, the Jensens seek a legal remedy in the form of monetary damages; the accounting for profits and constructive trust constitute equitable relief in aid of the legal action.

We have considered both parts of the test mandated by *Granfinanciera* and conclude that the Jensens are entitled to a jury trial under the Seventh Amendment. It is true that the Jensens' state court suit implicates both legal and equitable concerns, but the presence of equitable elements does not deprive them of their right to trial by jury of their legal claims.

### III.

■■■ We now turn to the issue of whether by petitioning for bankruptcy, the Jensens voluntarily submitted to the equitable jurisdiction of the bankruptcy court and thus waived any right to jury trial. Defendants turn again to *Granfinanciera,* in which the court explained that by filing a claim against a bankruptcy estate, a creditor triggers the process of "allowance and disallowance of claims," thereby subjecting himself to the bankruptcy court's equitable power. *Granfinanciera,* 492 U.S. at 58, 109 S.Ct. at 2799 (citing *Katchen v. Landy,* 382 U.S. 323, 336, 86 S.Ct. 467, 476, 15 L.Ed.2d 391 (1966)). If the trustee responds by filing a fraudulent conveyance action against the creditor, that action is also a part of the claims-allowance process which is triable only in equity. *Id.* Thus even though the Seventh Amendment would otherwise have entitled the creditor to a jury trial on the trustee's claim, when the same claim arises as part of the process by which the bankruptcy res is divided, it is triable in equity. As the court stated in *Katchen,* "the Bankruptcy Act ... converts the creditor's claim into an equitable claim to a pro rata share of the res, ... a share which can neither be determined nor allowed until the creditor disgorges the alleged voidable preference he has already received." *Katchen,* 382 U.S. at 336, 86 S.Ct. at 476 (citations omitted). If the creditor does not submit a claim against the bankruptcy estate, however, he retains his right to trial by jury on the trustee's claim because he has not subjected himself to the bankruptcy court's equitable power. *Granfinanciera,* 492 U.S. at 58, 109 S.Ct. at 2799.

The question we must decide then is whether a debtor effectively subjects his pre-petition claims to the bankruptcy court's equitable power when he files a petition for bankruptcy. We conclude that he does not. The petition for bankruptcy itself has nothing to do with whether the bankruptcy court can exercise equitable jurisdiction over a debtor's pre-petition claims. Its only effect is to pass ownership and control of the claims to the estate and its representative, either a trustee or a debtor in possession.[2] *Louisiana World Exposition v. Federal Insurance Co.,* 858 F.2d 233, 246 (5th Cir.1988). The claims belong to the estate after the petition for bankruptcy is filed, but that does not mean that the claims are then within the court's equitable jurisdiction or that they somehow become equitable in nature. *See Granfinanciera,* 492 U.S. at 33, 109 S.Ct. at 2782 (1989); *Schoenthal v. Irving Trust Co.,* 287 U.S. 92, 53 S.Ct. 50, 77 L.Ed. 185 (1932) (holding that a suit by a trustee in bankruptcy to recover preferential payments on

---

**2.** The Bankruptcy Code provides that "all legal or equitable interests of the debtor in property as of the commencement of the case" become property of the estate. 11 U.S.C. § 541(a)(1). It is clear that pre-petition claims are included among these interests. *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 205 n. 9, 103 S.Ct. 2309, 2313 n. 9, 76 L.Ed.2d 515 (1983).

behalf of the estate should be tried before a jury); E. Gibson, *Jury Trials in Bankruptcy: Obeying the Commands of Article III and the Seventh Amendment,* 72 Minn.L.Rev. 967, 1017 (1988) ("Neither the nature of the claim nor the relief sought is in any way altered by the bankruptcy filing."). To the contrary, the court has indicated that the right to a jury trial does not depend on the precise definition of the bankruptcy estate. *Granfinanciera,* 492 U.S. at 58, 109 S.Ct. at 2799.

Nor do we find that the petition for bankruptcy somehow "waives" the debtor's jury trial right. The court in *Granfinanciera* specifically noted that its rationale rested not on the traditional concept of "waiver" but on the idea expressed in *Katchen* that the creditor subjected his claim to the bankruptcy court's equitable jurisdiction by filing it against the estate. 492 U.S. at 59 n. 14, 109 S.Ct. at 2799 n. 14. The creditor's claim invoked the equitable process by which the bankruptcy court apportions the estate among the creditors. The debtor's petition for bankruptcy here did not invoke the court's equitable jurisdiction. The court explained in *Granfinanciera* that "[n]otwithstanding the fact that bankruptcy courts 'characteristically' supervised summary [equitable] proceedings, they were statutorily invested with jurisdiction in law as well and could oversee plenary proceedings." 492 U.S. at 57, 109 S.Ct. at 2798. A bankruptcy court has both legal and equitable powers; we are not persuaded that the petition for bankruptcy subjects the petitioner's extant claims only to the equitable wing.

As in *Granfinanciera,* the debtors' claims do not here "arise as part of the process of allowance and disallowance of claims." 492 U.S. at 58, 109 S.Ct. at 2799. Nor are they "integral to the restructuring of debtor-creditor relations." *Id.* Rather they are essentially claims brought by the debtor (in possession) against non-creditor third parties to augment the bankruptcy estate. Under these circumstances, we are unable to conclude that the debtor's petition for bankruptcy subjected his claims to the equitable jurisdiction of the bankruptcy court.

Our conclusion is consistent with the result recently reached by the Seventh Circuit in *In re Hallahan,* 936 F.2d 1496 (7th Cir.1991). In that case, the debtor petitioned for bankruptcy while he was a defendant in a suit then pending against him in federal district court. The petition triggered the automatic stay provision, 11 U.S.C. § 362, and the plaintiff filed a proof of claim and complaint of dischargeability in the bankruptcy court. The court denied the debtor's request for a jury trial. The Seventh Circuit affirmed, deciding that a dischargeability proceeding is a type of equitable claim for which there is no jury right in the first place. The court also reasoned that if creditors lose their jury trial rights by presenting claims against the estate, "debtors who initially choose to invoke the bankruptcy court's jurisdiction to seek protection from their creditors cannot be endowed with any stronger right." *Id.* at 1505. The court therefore concluded that "[t]he Seventh Amendment confers no right to a jury trial on a debtor like Hallahan, who files voluntarily for bankruptcy and is a defendant in an adversary proceeding." *Id.* at 1506.

We agree with the result in *Hallahan,* but not its reasoning with regard to why the debtor had no right to a jury trial, even if the claims against him were legal in nature. As we see it, the debtor was not entitled to a jury trial in *Hallahan,* not because the debtor had filed a petition in bankruptcy, but because the plaintiff had submitted his claim against the debtor to the equitable jurisdiction of the bankruptcy court. Filing a proof of claim denied both the plaintiff and the defendant, debtor, any right to jury trial that they otherwise might have had on that claim. Debtor's petition in bankruptcy could have no legal effect on plaintiff's claim other than to stay it.

We decide that petitioners had a right to trial by jury of their legal claims which was not lost when they petitioned for bankruptcy. The district court erred by refusing to grant their request that the bankruptcy court be ordered to grant a jury trial. We grant a writ of mandamus, and remand to

the district court for proceedings consistent with this opinion.

PETITION GRANTED.