**In re CORAL PETROLEUM, INC., Debtor.**

**Jeffrey A. Compton, Plaintiff,**

**v.**

**William Vincent Walker, and Colonial American Casualty & Surety Company A/K/A Fidelity and Deposit Company, Defendant.**

Bankruptcy No. 83–02460–H2–11.
Adversary No. 99–3655.

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

June 16, 2000.

Marcy Kurtz, Houston, TX, for Plaintiff.

Susan Brandt, Houston, TX, for Defendant.

### REASONS FOR DENIAL OF MOTION FOR ABSTENTION (Doc. #11), AND REPORT TO DISTRICT COURT REGARDING WITHDRAWAL OF THE REFERENCE OF THIS ADVERSARY PROCEEDING

WESLEY W. STEEN, Bankruptcy Judge.

In this adversary proceeding, Plaintiff Jeffrey Compton ("Compton") seeks to recover from Defendant William Walker

("Walker") sums in excess of $1.9 million (plus punitive and exemplary damages). Compton alleges that Walker, as predecessor trustee, is legally responsible for losses experienced by a creditors' Liquidating Trust established by confirmation of the chapter 11 plan in this bankruptcy case.[1] Walker requests the Court to abstain from hearing this adversary proceeding. In the same motion, Walker asks the district court to withdraw the reference of this adversary proceeding. The issues posed by Walkers' motions are (i) whether a trustee of a liquidating trust operating under the supervision of the bankruptcy court has a right to a jury trial in an action for alleged breaches of fiduciary obligation related to loss of assets of the trust and alleged failure to comply with the court orders confirming the plan and creating the trust; and (ii) whether the district court should withdraw the reference of this matter from the bankruptcy judge.

For reasons set forth below, the Court has this day issued an order denying the motion to abstain. Federal Rules of Bankruptcy Procedure 5011 provides that the motion to withdraw the reference shall be heard by a district judge. By order issued this date, the clerk is directed to forward to the district court Walker's motion for withdrawal of the reference and a copy of this report.

## I. Facts

This bankruptcy case was filed in 1983. A chapter 11 plan ("Plan") was confirmed in 1986. The Plan created a Liquidating Trust[2] "... for the purpose of liquidating and distributing the Trust Property...". The Liquidating Trust was divided into two separate funds, the Secured Creditors' Fund and the Unsecured Creditors' Fund. In addition, a third fund, the operating account, was created.[3] A trustee, Walker, was selected by the Creditors' Committee and was approved by the Court.[4] The trustee's duties included: (i) holding collateral subject to the interests of holders of Generally Secured Claims, (ii) receiving and liquidating the Distributable Assets,[5] (iii) liquidating trust property and paying the costs and expenses of the Trust,[6] and (iv) filing and prosecuting objections to claims and proceedings for the recovery of fraudulent transfers and preferential transfers.[7] "The rights, powers, and duties of the Trustee and other provisions of the Trust are set out in Article IX ..." of the Plan.[8] The Trustee was authorized to exercise "... any and all powers granted to the Trustee by common law or any statute, including every power granted to the Trustee by the law of the State of Texas ..."[9] The Trustee was required to "... keep the Creditors' Committee and other parties fully informed as to all issues ... pursuant to the notice requirements of Section 9.06 ..." of the Plan.[10] The Plan makes the Trustee strictly accountable to the bankruptcy court for fees, cost reimbursement, and distributions to creditors.

1. Compton also seeks to recover $200,000 from Walker's bond, but the bonding company has not asked for abstention or for withdrawal of the reference.

2. Capitalized terms in this paragraph are defined in the Plan.

3. Court order appointing trustee and setting his bond, April 7, 1986, docket # 1217.

4. Plan § 5.01.

5. Plan § 5.02. The Distributable Assets included the Hawaii condominium, Snowmass personalty, automobile proceeds, Montana inventory, preference settlements, Argo stock, Amro settlement funds, Palm Springs Condominium, cash in the Debtor's account as of the Effective Date, all claims and causes of action belonging to the Debtor, proceeds of letters of credit, proceeds from any settlements, all real and personal property not previously liquidated.

6. Plan § 7.01.

7. Plan § 12.01.

8. Plan § 6.04.

9. Plan § 9.01.

10. Plan § 9.02.

The standards to be applied with respect to fees and expenses of the Trustee and his professionals are those generally applicable under Bankruptcy Code §§ 327 and 330 for fees paid to professionals. The allowance/disallowance of claims is governed generally by the Bankruptcy Code with modifications in the Plan and attached Settlement Agreements.

9.05 All costs, expenses and obligations incurred by the Trustee in administering the Trust or in any manner connected, incidental or related thereto, shall be a charge against the Trust Property upon final application and approval by the Court in accordance with the standards for awards of compensation and reimbursement of expenses set forth in the Bankruptcy Code, and the Court, upon being satisfied as to the correctness of any and all such costs, expenses and obligations, shall approve and direct final payment thereof, prior to a final distribution to the Creditors as herein provided, or it shall direct the Trustee to maintain adequate reserves for such payment prior to making distributions to the Creditors. The Trustee, and any professionals employed by the Trustee, shall separately record all fees and charges incurred in the administration of the Secured Creditors' Fund and the Unsecured Creditors' Fund and such charges and fees shall be satisfied out of the fund for which the charge or fee was incurred... The compensation for the Trustee will be limited to a maximum of no more than the amounts that would be paid to a trustee if Coral's case were a liquidation case under Chapter 7 of the Bankruptcy Code.

Section[11] 9.06 of the Plan required the creation of a "notice list" and required the Trustee to give notice of "all matters significantly affecting the Trust, including ...

distributions .. [and] payment of expenses." If there was an objection to any action proposed by the Trustee, the bankruptcy court was to "hear and determine" the matter.

Section 9.09 of the Plan limited investment of trust cash assets to "United States Treasury Bills, interest bearing certificates of deposit of a banking institution with in excess of $300 million in primary capital, or interest bearing savings account of a banking institution with in excess of $300 million in primary capital."

Section 9.10 of the Plan required the Trustee to "... keep, or cause to be kept, separate books for the Secured Creditors' Fund and the Unsecured Creditors' Fund ... and an accounting of receipts and disbursements".

Section 13.01 of the Plan retained jurisdiction of the bankruptcy court until all payments and distributions had been made and until there was entry of a Final Order concluding and terminating the case. This retained jurisdiction specifically included jurisdiction:

(viii) *To hear and determine* controversies relating to the Trust created hereunder.[12] [Emphasis supplied.]

Attached to the Plan are three settlement agreements, evidencing very complicated arrangements for settlement of what appear to be over one hundred million dollars of claims and allowance of various claims as secured claims and unsecured claims. .

The Plan was approved and consummated in 1986. Walker was appointed trustee of the trust. He made various reports to the bankruptcy court from 1986 through 1998 in connection with the performance of his duties.

The undersigned bankruptcy judge took office in 1997, and undertook a practice of periodically examining cases that had been

11. Although the numbers appear to be paragraph numbers, the Plan refers to them as section numbers. The "section" terminology is used for consistency with the Plan.

12. The retention of jurisdiction was "... without prejudice to the right of any party to request the Court to allow adjudication of such matters in another forum ..." Plan § 13.01.

dormant for an extended period. About the middle of 1998, the Court noticed that Walker had not filed a final report in this case, even though the chapter 11 plan had been confirmed some 12 years earlier. The docket sheet showed very little activity for an extended period except for periodic reports by Walker to the Court and minute entries by the Court indicating that Walker had promised to close the case expeditiously.

On August 12, 1998, the Court issued an Order for Status Conference. Walker requested one or more continuances. On November 13, 1998, Walker filed a post-confirmation certificate (docket # 2029) and a request for cancellation of the status conference.

Walker reported approximately 300 unsecured creditors holding approximately $90,089,690.77 in claims.[13] In his 71–page post-confirmation certificate and accounting,[14] Walker reported receipts and disbursements as follows:

| Total Receipts | | $32,765,938.35 |
|---|---|---|
| Trustee's Compensation | $ 355,282.43 | |
| Attorneys for Trustee | 2,359,884.57 | |
| Other professionals | 1,658,984.48 | |
| Secured Creditors | 14,862,902.74 | |
| Priority Creditors | 635,419.12 | |
| Unsecured Creditors | 11,854,227.03 | |
| Other | 1,034,905.26 | |

Two creditors objected to approval of the final distribution, alleging that they had not received distributions as recited in Walker's final report. One such objection was subsequently withdrawn, although the creditor did not appear in court to explain who had paid the claim subsequent to the objection and prior to the hearing. The other creditor contends that it is entitled to a substantial distribution as an unsecured creditor, and that the accounting for payments to secured creditors is incorrect.

In the request for cancellation of the status conference, Walker implied that he had properly performed all duties and that the case should be closed without further inquiry. Nevertheless, the court conducted a status conference and on January 14, 1999, in open court, Walker indicated that everything was in order and that he could close the case, as soon as certain funds were "replenished". Upon further inquiry by the Court, Walker reported a loss of about $1,000,000 from the trust fund, but he stated that he would replenish the funds from his own personal funds.

The Court adjourned the hearing to review the docket sheet. Subsequently, the Court issued an order for Walker to explain a number of conflicting statements and accountings made to the Court over the preceding 5 years. At the reconvened hearing, Walker asserted his rights under the Fifth Amendment of the Constitution. Walker never did explain the discrepancies.

One of the creditors of the estate presented evidence at the hearing, including the testimony of Walker's accountant which indicated that there were indeed false accountings and statements. It appears that there may be substantial discrepancies covering 12 years of accounts and alleged payment to hundreds of professionals and/or creditors. Subsequent to that hearing: (i) Walker was removed as Trustee, (ii) Compton was appointed Successor Trustee, and (iii) the Court issued a report and referral to the United States Attorney for investigation of potential criminal conduct as required by 18 U.S.C. § 3057. In the referral to the United

13. Docket # 2016.

14. Docket # 2029.

States Attorney, the undersigned bankruptcy judge stated:

> In summary, the Court believes that William Vincent Walker ("Trustee"), appointed as Trustee of a trust created under a confirmed chapter 11 plan in this bankruptcy case, filed false statements, false accounts, and false and misleading reports with the Court in an attempt to hide the fact that he had suffered approximately $1.9 million in trading losses with funds he held as trustee; the Court further believes that the trading losses resulted from unauthorized investments.

On November 22, 1999, Compton filed this adversary proceeding seeking a judgment for $1.9 million compensatory damages (plus exemplary and punitive damages) from Walker. Compton alleges that the losses are substantially more than the amount admitted by Walker and that Walker is guilty of breach of fiduciary duty, conversion, gross negligence and willful misconduct, fraud, negligent misrepresentation, breach of contract, and civil conspiracy while serving as trustee of the trust created by confirmation of the chapter 11 plan. On April 14, 2000, the Court issued a scheduling order under Federal Rules of Bankruptcy Procedure 7016. The discovery deadline is December 31, 2000. Because of Walker's motion for withdrawal of the reference and abstention, and because of Walker's demand for a jury trial, the Court has set a pre-trial conference for October 16, 2000, to address appropriate matters, if necessary, depend-ing on the district court's decision on withdrawal of the reference. No trial date has been set.

## II. Contentions of the Parties

First, Walker asks the bankruptcy court to abstain from hearing this matter. Walker contends that state substantive law governs the determination of the causes of action asserted by Compton, and therefore the bankruptcy court should abstain from hearing the case. In addition to the contention about state substantive law providing the rule of decision, Walker contends that the bankruptcy court should abstain because Walker has a right to a jury trial.

Second, and in the alternative, Walker asks the district court to withdraw the reference of this case from the bankruptcy court. Walker contends that when the chapter 11 plan was confirmed in 1986 the chapter 11 plan was consummated, the bankruptcy estate terminated, and the bankruptcy court's core jurisdiction terminated. Therefore, Walker contends that this adversary proceeding is not within the core jurisdiction of the bankruptcy court.[15] In addition, Walker has demanded a jury trial and does not consent to the bankruptcy judge conducting the jury trial. Walker contends that because the adversary proceeding is a non-core, related proceeding and because Walker is allegedly entitled to a jury trial (which a bankruptcy court may not constitutionally provide without Walker's consent), the district court should withdraw the reference of this adversary proceeding. Finally, while Walker's coun-

---

**15.** In his initial motion, Walker's counsel apparently confused the rules applicable to magistrate judges and the rules applicable to bankruptcy judges. Walker stated that he does not consent to referral of the reference of this non-core matter to the bankruptcy court. In a subsequent memorandum of authorities, written by bankruptcy counsel, Walker does not press that contention. For purposes of completeness, the Court will note that referral of the reference of a case to a bankruptcy judge does not involve consent of the parties. By virtue of a general order of reference, referral of cases to bankruptcy judges in the Southern District of Texas is automatic when there is bankruptcy jurisdiction under 28 U.S.C. § 1334 and when the district court has the authority to refer the matter under 28 U.S.C. § 157. See Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc dated August 9, 1984. Consent of the parties in such cases is limited to establishing whether the bankruptcy judge, in non-core matters, may issue a final decision or whether the bankruptcy judge issues proposed findings of fact and conclusions of law that are reviewed de novo by the district judge. Federal Rules of Bankruptcy Procedure 9033.

sel has not energetically asserted the contention, it is clear that Walker's counsel believes that the undersigned bankruptcy judge has formed a conclusion about the ultimate disposition of this case and therefore should not be allowed to try the case.

Compton contends that neither abstention nor withdrawal of the reference is appropriate because the claims asserted in this adversary proceeding are within the core jurisdiction of the bankruptcy court. Compton contends that the claims are within the core jurisdiction of the bankruptcy court because they arise out of the execution, implementation, and interpretation of provisions of the chapter 11 plan, because the plan expressly reserved jurisdiction, and because in this case the bankruptcy estate continued post-confirmation. In addition, Compton asserts that the bankruptcy court has inherent authority and core jurisdiction to provide remedies for defalcation by officers of the court performing under the authority and supervision of the bankruptcy court.

### III. *Jurisdiction*

■ A United States district court has jurisdiction over civil proceedings arising in bankruptcy cases, over civil proceedings arising under the Bankruptcy Code, and over civil proceedings related to a bankruptcy case.[16] The district court may refer all such proceedings to the bankruptcy judges of the district.[17] The United States District Court for the Southern District of Texas has exercised that authority.[18] Bankruptcy judges may hear matters within their core jurisdiction and the bankruptcy judge may dispose of those matters by final order.[19] The language of the Bankruptcy Code is specific. When the Bankruptcy Code uses the term "and determine" it means that the bankruptcy court may exercise its core jurisdiction which involves trial without jury and issuance of a final order, not a report and recommendation.[20] Core matters "include, but are not limited to" matters concerning the administration of the estate, orders to turn over property of the estate, and other matters affecting the liquidation of the assets of the estate.[21]

> The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11. *A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by state law.*[22] [Emphasis supplied.]

The bankruptcy judge may hear matters that are not core matters, but in such circumstances the bankruptcy judge may not issue a final order, but may issue findings of fact and conclusions of law. The district court reviews such findings *de novo*.[23]

A. This district court has jurisdiction over the subject matter of this adversary proceeding and that jurisdiction is "core jurisdiction" which can be, and has been, properly delegated to the bankruptcy court.

■ First, Walker is simply wrong when he argues that because state sub-

---

**16.** 28 U.S.C. § 1334.

**17.** 28 U.S.C. § 157.

**18.** General Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc, August 9, 1984.

**19.** 28 U.S.C. § 157(b)(1).

**20.** *Matter of Wood,* 825 F.2d 90, 95 (5th Cir. 1987); 28 U.S.C. § 157(b)(1) states "Bankruptcy judges may *hear and determine* ...

[core matters] ... and may enter appropriate orders and judgments ..." [Emphasis supplied]. Contrast with F.R.B.P 9033 which governs non-core matters: "In non-core proceedings *heard* pursuant to 28 U.S.C. § 157(c)(1) ..." [Emphasis supplied.]

**21.** 28 U.S.C § 157(b)(1) (Supp.2000).

**22.** 2 U.S.C. § 157(b)(3) (Supp.2000).

**23.** 28 U.S.C. § 157(c)(1) (Supp.2000), Federal Rules of Bankruptcy Procedure 9033.

stantive law is involved, the matter is not a core proceeding. The statute, cited above, clearly provides that determination of core status is not made solely on the basis that state law provides the substantive rule of decision.[24]

■ Second, Walker is incorrect when he argues that the Court has no jurisdiction over him because the plan was confirmed prior to the conduct that is the subject of this adversary proceeding.

■ A federal court's authority over its officers and proceedings is not defined so much by such "timing" as it is defined by the court's power to protect the integrity of the judicial process. In *Southmark*,[25] the Fifth Circuit Court of Appeals decided a matter that involved pre-confirmation conduct. However, the court's rationale was not based on the time of the conduct but on protecting the integrity of the process. The court made it clear that a bankruptcy court's core jurisdiction extends to professionals and others whom the bankruptcy court appoints:

> A sine qua non in restructuring the debtor-creditor relationship is the court's ability to police the fiduciaries, whether trustees or debtors-in-possession and other court-appointed professionals, who are responsible for managing the debtor's estate in the best interest of creditors. The bankruptcy court must be able to assure itself and the creditors who rely on the process that court-approved managers of the debtor's estate are performing their work, conscientiously and cost-effectively.[26]

In this case, Walker sought and obtained appointment by the Court as trustee of assets that were property of the estate. Assets of the estate were turned over to him for custody, safekeeping, and distribution according to the orders of the Court. Walker was apparently paid over $350,000[27] pursuant to terms established by the Plan, which included a provision for the bankruptcy court to "hear and determine" any disputes related thereto. For over 12 years, Walker recognized his obligation to report to the Court, made reports to the Court, and sought Court approval of his transactions. The chapter 11 plan (under which Walker exercised his authority) expressly reserved jurisdiction to "hear and determine" disputes relating to the trust. The language "and determine" in 28 U.S.C. § 157(b)(1) and in the Plan's retention of jurisdiction indicate an intent to submit disputes about plan administration to the summary[28]/core/nonjury jurisdiction of the bankruptcy case.[29]

---

24. In addition, the Fifth Circuit Court of Appeals has recently reaffirmed the principle: "To begin with, the state law origin of Southmark's claims is not dispositive. The jurisdictional statute expressly provides that the applicability of state law to a proceeding is insufficient in itself to render it a non-core proceeding. 28 U.S.C. § 157(b)(3)." *In re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999), *cert. denied*, 527 U.S. 1004, 119 S.Ct. 2339, 144 L.Ed.2d 236 (1999).

25. *Id.*

26. *Id.* at 931.

27. *Supra*, text at footnote 14.

28. Many bankruptcy professionals had hoped that the 1979 Bankruptcy Code and related jurisdictional statutes had forever abolished the chaos of distinguishing between summary and plenary jurisdiction. In *Granfinanciera v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989) the Supreme Court ruled that jury trial rights did not depend on Congress' classification of the dispute as a core or noncore matter. However, the Supreme Court cited *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966) and *Schoenthal v. Irving Trust Co.*, 287 U.S. 92, 53 S.Ct. 50, 77 L.Ed. 185 (1932) for the proposition that voluntary submission to the summary jurisdiction of the bankruptcy court waives the right to jury trial. Since the court rejected the core/noncore nomenclature for discussion of this concept, the summary/plenary dichotomy is revived, at least for purposes of discussing the limitations on the right to jury trial in bankruptcy courts.

29. *See* footnote 20, *supra*.

■ Walker argues that the critical consideration in this case is that his conduct occurred *post* confirmation of the chapter 11 plan. He cites a number of cases for the proposition that a bankruptcy court has limited post-confirmation jurisdiction. As a general proposition, Walker is correct. Walker also distinguishes all cases cited by Compton on the basis that those cases involve *pre*-confirmation trustees, not *post*-confirmation trustees. The Court agrees with Walker that for this reason, the cases cited by Compton are not dispositive of the jurisdictional issues. However, none of the cases cited by either party involve a liquidating trust under which the trustee submitted himself to the jurisdiction of the court, made regular reports to the court, and sought court approval for his conduct. Therefore, the Court concludes that none of the authority cited by either of the parties is dispositive. This matter appears to be *res nova*.

Walker cites *Holywell Corp. v. Smith,* 503 U.S. 47, 112 S.Ct. 1021, 117 L.Ed.2d 196 (1992) for the proposition that the trustee of a liquidating trust created by a confirmed chapter 11 plan of reorganization does not act as a fiduciary of the bankruptcy estate. Walker argues that this implies that the bankruptcy court has no jurisdiction over him, or at least that it does not have core jurisdiction, and therefore the bankruptcy court should abstain. But *Holywell* is not on point because it deals with liability for taxes, not the jurisdiction of a bankruptcy court over alleged defalcation by a trustee operating under the authority and supervision of the bankruptcy court. What the Supreme Court held in *Holywell* is that the trustee was liable for taxes under applicable provisions of the Internal Revenue Code as a transferee of substantially all of the property of the bankruptcy estate. In addition, Walker's argument is flawed because (as noted above) *Granfinanciera* holds that the denial of a right to a jury trial because of voluntary submission to the summary jurisdiction of the bankruptcy court does not depend on precise and fine distinctions and classification of property of the estate.[30] Finally, *Holywell* actually supports Compton's position. In *Holywell,* the bankruptcy court made the initial adjudication. The Supreme Court reversed the result on the basis of substantive law, not on jurisdictional grounds. The Supreme Court, in effect, affirmed the bankruptcy court's exercise of summary jurisdiction over the trustee of the post-confirmation trust.[31]

■ Walker's argument is flawed in its focus on the status of property of the estate. Walker argues that at the instant that the plan was confirmed and property of the estate was transferred to him, the property ceased to be property of the estate because the estate terminated. Therefore, he argues, the Court does not have core jurisdiction. However, the Supreme Court rejected the notion that the Seventh Amendment right to jury trial turns on fine distinctions of property of the estate.[32] In addition, the *gravamen* of the *Southmark* decision is that the bankruptcy court has core jurisdiction over matters that are so central to the operation of the bankruptcy case that creditors reasonably rely on the integrity of the federal judicial process to protect them.

> The bankruptcy court must be able to assure itself and the creditors who rely on the process that court-approved managers of the debtor's estate are performing their work, conscientiously and cost-

---

**30.** See footnote 27, *supra*

**31.** Although it does not appear that anyone in *Holywell* questioned the authority of the bankruptcy court over the various claims.

**32.** In disputing Justice White's contention that *Granfinanciera* overruled *Katchen v. Lan-* dy, the majority opinion in *Granfinanciera* wrote: "...under the Seventh Amendment, a creditor's right to a jury trial ... depends upon whether the creditor has submitted a claim against the estate, not upon Congress' precise definition of the 'bankruptcy estate' ..." 492 U.S. at 58, 109 S.Ct. 2782.

effectively.[33]

Under the circumstances involved in this dispute, any distinction between the pre- and post-confirmation status of the property delivered to Walker is a distinction without a difference. The critical element is that property, which was property of the estate immediately before being turned over to Walker, was turned over to him for distribution to creditors. Walker assumed his duties under a court order and a chapter 11 plan which gave him virtually all of the duties and responsibilities of a chapter 7 trustee. The plan expressly retained virtually all of the federal court control that a bankruptcy court would exercise over a chapter 7 trustee. Creditors were told, with Walker's knowledge and consent, that the Court would supervise the process. Walker submitted himself to the jurisdiction of the Court at the time that he accepted the trustee's duties and recognized that jurisdiction periodically thereafter (for 12 years) when he submitted reports to the Court and sought approval of the Court for his actions. Walker sought the patina and protection of bankruptcy court supervision; he cannot now be allowed to repudiate and to reject the authority under which he acted. As the Fifth Circuit reasoned in *Southmark,* "core jurisdiction includes matters so central to the bankruptcy case that the integrity of the bankruptcy process is implicated."[34] Classification of the action against Walker as a "core" matter is well within the logic of the *Southmark* decision.

This adversary proceeding literally "arises in" a bankruptcy case in that it was initially filed in the bankruptcy case to determine the consequences of alleged misconduct and malfeasance by a court-appointed trustee. Therefore, the Court concludes that the proceeding is a core proceeding that arises in a chapter 11 case.

### B. Abstention

■ In his first memorandum, Walker asserted that the Court should abstain under 28 U.S.C. § 1334(c)(2). Walker appears to have abandoned that argument in his second memorandum. It is mentioned, here, only to reject the argument if it is not abandoned. This adversary proceeding does not qualify for § 1334(c)(2) abstention because there is no proceeding that has been commenced in state court.

■ With respect to the grounds that Walker cites for discretionary abstention under 28 U.S.C. § 1334(c)(1), the Court finds that only one may have merit: the demand for a jury trial. The others are not substantial, and only two deserve comment.

### Efficient administration of the estate.

Walker argues that abstention is appropriate because if the court abstains there will be no effect on the administration of the estate because the plan has been confirmed. That argument is a rehash of the fine distinction between pre- and post-confirmation classification of property. For the same reasons articulated above, the Court concludes that the argument is without merit. This is not a case in which a reorganized debtor is operating a business from which various claims will be paid as the business makes profits. This is simply a distribution of cash from a fund and the distribution is taking place within the bankruptcy process. Notwithstanding the correct (but artificial) distinction between pre- and post-confirmation classification of assets, in *this* case the court-supervised distribution of cash *is* the administration of the estate. This argument is not valid.

### State law issues predominate over bankruptcy issues.

The essence of this adversary proceeding is whether Walker violated his fiduciary responsibility under a trust established by a plan confirmed by the bankruptcy court while he was acting as, and under

---

**33.** *Southmark,* 163 F.3d at 931.

**34.** *Id.*

the strictures applicable to, an officer of the court. Although state law may provide the substantive rule of decision, that fact alone should not be the basis for abstention. As *Southmark* recognizes, state law provides the substantive rule for many or most bankruptcy decisions. Walker concedes that the state law issues are not particularly difficult or unsettled.[35] There is no reason why federal court should not hear this matter.

*Jury Trial.*

■ This is the most difficult issue, but is a better argument for withdrawal of the reference than for abstention. Nevertheless, the Court will discuss it in the context of abstention since Walker has argued that it is grounds for abstention.

■ Walker has demanded a jury trial. To determine whether Walker has a right to a jury trial, one must determine whether the action is a suit "... in which legal rights ... [are] to be ascertained and determined, in contradistinction to those where equitable rights alone ... [are] recognized." [36] To do so, one must "compare the ... action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity." [37] Then, one examines "... the remedy sought and determine[s] whether it is legal or equitable in nature ... The second stage of this analysis is more important than the first." [38] It is clear that the core/noncore analysis does not determine the right to jury trial.[39]

Walker cites *Anderson v. United States,* 520 F.2d 1027 (5th Cir.1975) for the proposition that an action against a bankruptcy trustee for negligence is an action at law, not an action in equity. Therefore, Walker contends, he is entitled to a jury trial since he has been sued for negligence.

Anderson was a "responsible officer" of a chapter 7 corporate debtor. The debtor had failed to pay trust fund taxes to the United States. Anderson and the IRS brought claims against each other in the District Court for the Western District of Louisiana for determination of "responsible officer liability" for those taxes, and Anderson filed a third party complaint against Turner, the chapter 7 trustee of the defunct corporation. Anderson alleged that Turner was negligent for failure to obtain a discharge of the taxes. The Trustee sought a stay of the proceeding on the grounds that Anderson was required to get permission from the Bankruptcy Court of the Eastern District of Louisiana (where the chapter 7 case had been administered) before suing him. The Fifth Circuit held that it had no jurisdiction to entertain the appeal because jurisdiction over an appeal of denial of a stay exists only if (i) the action is an action at law, and (ii) a stay is necessary to resolve a defense that arises in equity. The Fifth Circuit held, without elaboration, that a suit against a chapter 7 trustee for negligence is an action at law.

*Anderson* is not dispositive of the issues presented here. *Anderson* is not a suit for breach of trust. It is a suit for negligent failure to discharge a debt. As discussed more fully below, a suit against a trustee of an express trust or for an explanation of the loss of trust property and for an accounting and redress of alleged breaches of fiduciary responsibility are matters appropriately handled by a court of equity, not a court at law. *Anderson* is a simple suit for alleged negligence of a trustee to perform acts related to third parties, it is not an action for loss of trust property.

Walker cites the case of *In re Jensen,* 946 F.2d 369 (5th Cir.1991) for the proposi-

---

**35.** See page 15, paragraph 4 of the memoranda.

**36.** *Granfinanciera,* 492 U.S. at 41, 109 S.Ct. 2782, citing *Parsons v. Bedford,* 3 Pet. 433, 7 L.Ed. 732 (1830).

**37.** *Id.*

**38.** *Id.*

**39.** *Id.* at 33, 109 S.Ct. 2782.

tions (i) that allegations of fraud and civil conspiracy are legal in nature and thus enjoy the protections of the Seventh Amendment, (ii) that combination of legal claims with equitable claims does not waive the right to jury trial, and (iii) that filing a bankruptcy petition does not waive a right to jury trial. Walker is correct. But although *Jensen* gives some guidance, it does not quite determine the issues in this case.

In *Jensen*, the debtors contended that they had suffered damages from certain pre-bankruptcy events involving breach of fiduciary duty, fraud, tortious interference with a prospective contract and existing business relations, and conspiracy. None of these claims involved a trust. The Jensens filed a chapter 11 bankruptcy case and confirmed a chapter 11 plan which reserved to them the right to prosecute these pre-petition claims. The Fifth Circuit determined that the Jensens had a right to a jury trial on their claims.

The Fifth Circuit held that an action for breach of fiduciary responsibility is within the exclusive jurisdiction of the courts of equity, that an action for civil conspiracy was a matter to be tried by a court of law, and that an action for fraud could be brought in either a court of law or a court of equity, depending on the circumstances. The court also held that combining actions at law with actions in equity did not waive the right to a jury trial on the actions at law. However, the court also said that the fact that there are both legal and equitable elements in the plaintiff's claim merely demonstrates that the *first test* (*i.e.* analysis of the "legal" or "equitable" nature of the action) is "anemic"; when that occurs,

the court said, one must look to the second test to determine whether there is a right to a jury trial.[40] Therefore, the *Jensen* rule for this case is that the "first test" is not determinative as to whether there is a right to jury trial merely because Compton has plead both legal and equitable grounds for relief.

In looking at the second test, (*i.e.* whether the requested remedy is legal or equitable), the Fifth Circuit held that

> Awards of monetary relief are for present purposes not without their ambiguities. The reality is that there may be situations in which an award of monetary relief is equitable.[41]

The court cites *Dairy Queen v. Wood*, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962) as the Rosetta Stone for interpreting the character of money damages. But like *Granfinanciera*, *Dairy Queen* relates more like a Delphic Oracle than a Rosetta Stone. *Dairy Queen* tells us only that money damages sought by an action for an accounting can be equitable in nature if the plaintiff shows "... that the accounts between the parties are so complicated that only a court of equity could unravel them." Neither *Dairy Queen* nor *Jensen* indicates how one determines the limits of a jury's ability to unravel complicated accountings, when that showing is to be made, or whether it can be apparent from the pleadings.

Although neither *Dairy Queen* nor *Granfinanciera* provides a calculus for determining whether "money damages" are legal or equitable in nature, there is some benefit to be gained from further examination of 18th-century actions brought in the courts of England. With apologies for lack

---

40. "At this first stage of the analysis we find, therefore, both historically legal and historically equitable elements in the Jensens' state court law suit. This is not surprising. Rather, it is illustrative of the predictably anemic explanatory power of the first inquiry, and inability that itself accounts for the court's stress upon the second inquiry." *In re Jensen*, 946 F.2d 369, 371 (5th Cir.1991); *See also Chauffeurs, Teamsters and Helpers, Local No.*

391, *Petitioner v. Thomas C. Terry, et al.*, 494 U.S. 558, 570, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990): "Respondents' action against the Union thus encompasses both equitable and legal issues. The first part of our Seventh Amendment inquiry, then, leaves us in equipoise as to whether respondents are entitled to a jury trial."

41. *Jensen*, 946 F.2d at 372.

of more expertise in that area, the bankruptcy court concludes that this adversary proceeding (despite the labels assigned by plaintiff) is essentially an action for an accounting from a trustee of an express trust, an action sounding exclusively in equity.

Blackstone wrote that trusts are the "proper and peculiar objects of a court of equity".[42] In comparing courts of law and equity, Blackstone explained that the two courts were substantively similar, using the same bases to determine a case. He differentiated the courts in the manner in which they received proof, conducted a trial, and granted relief. He also differentiated the courts of law and equity on an "accidental ground of jurisdiction" that courts of equity have jurisdiction over trusts in their form and effect.[43] Blackstone alludes to a time when trust cases were brought in a court of law, but the courts of equity eventually took exclusive jurisdiction over trusts.[44] "A trust is really nothing except a confidence reposed by one person in another and enforceable in a court of equity."[45]

Other writers agree that although trust issues were once heard by courts of law,[46] by 1791 they were exclusively heard in the equity jurisdiction of the Chancery Court.[47] The Supreme Court in *Clews v. Jamieson*, 182 U.S. 461, 479, 21 S.Ct. 845, 45 L.Ed. 1183 (1901) recognized the exclusive jurisdiction of the chancery court over trust cases and held that the type of relief sought was not determinative of the equity jurisdiction under which the matter would be heard; a trust matter is within the equity jurisdiction of the court even if the relief sought is monetary recovery.[48]

 In addition to being an action in equity against a trustee of an express trust, Walker's submission to the summary jurisdiction of the bankruptcy court in distribution of the *res* to creditors goes far beyond what the Supreme Court and Fifth Circuit have articulated to be sufficient for waiver of a Seventh Amendment right. Walker asked the bankruptcy court to appoint him as trustee, was appointed by the bankruptcy court, could make distributions only by order of the bankruptcy court, was required to make accountings to the bankruptcy court, did make accountings to the bankruptcy court, and had the protection of court supervision for 12 years. Each of those proceedings was within the summary jurisdiction of the bankruptcy court and involved the division of the *res* to creditors.[49] Walker's submission to the jurisdiction of the bankruptcy court was far

**42.** 2 WILLIAM BLACKSTONE, COMMENTARIES *426.

**43.** *Id.* at *436.

**44.** *Id.* at *439. Thomas Lewin mentions that at one time a court of law ordered a trustee to pay damages for breach of implied contract, but this "clearly extra provincial" use of authority had long since been abandoned. THOMAS LEWIN, A PRACTICAL TREATISE OF THE LAWS OF TRUSTS AND TRUSTEES 11 (New York, Halsted and Voorhies 1839). This may explain Blackstone's reference.

**45.** *In re Williams*, 2 L.R. 12, 19 (Ch. Div'l Ct. 1897). This quote is used in the ENCYCLOPEDIA OF THE LAWS OF ENGLAND, Volume XIV, 268 (2d ed.1909); According to the authors there are three essential characteristics of a trust: (1) property which is the subject of the confidence, (2) a trustee in whom the confidence is vested, and (3) a beneficiary of the confidence, i.e. *cestui que trust*. The Encyclopedia also quotes Thomas Lewin, "cestui que trust

has no remedy but by subpoena in Chancery". LEWIN, note 44, *supra*. Chancery is meant to refer to any equitable court as opposed to common law courts who have no cognisance in matters of trust. *See id.*

**46.** *See* LEWIN, note 44, *supra*.

**47.** *See* JOHN H. BAKER, AN INTRODUCTION TO ENGLISH LEGAL HISTORY 242–44 (2d ed.1979).

**48.** *Jamieson*, 182 U.S. at 479, 21 S.Ct. 845.

**49.** Walker's brief argues that the confirmation of the plan of reorganization terminated the classification of the property as property of the estate and therefore terminated the bankruptcy court's jurisdiction. That argument is addressed more fully elsewhere, but it bears repeating that the Supreme Court does not base the jury trial right on a "precise definition of the 'bankruptcy estate'". *Granfinanciera*, 492 U.S. at 58, 109 S.Ct. 2782.

more substantial than submission of a proof of claim. In *Granfinanciera* the Supreme Court suggested that submission of a proof of claim and attendant submission to the summary jurisdiction of the bankruptcy court would waive a right to a jury trial.[50] If there is any vitality in that concept, the dispute in this adversary proceeding is the quintessential expression of it.

In the circumstances involved here, the Court concludes that a jury trial is not constitutionally required because trusts are special creatures over which courts of equity had virtually exclusive jurisdiction. In addition, Walker's voluntary submission to the jurisdiction of the bankruptcy court and acting as an officer of the court in distributing the trust property is a submission to the inherent authority of the court over its officers, an authority not traditionally submitted to juries.

*Conclusion Concerning Abstention*

The only substantial grounds suggested by Walker for abstention is that the bankruptcy court cannot supply a jury trial. The Court concludes that Walker does not have a right to a jury trial under the circumstances in this case and that, even if he did, those grounds would not be substantial grounds for abstention but would be grounds for withdrawal of the reference at the appropriate time. Therefore, the Court declines to abstain and will deny the motion to abstain.

C. Withdrawal of the Reference.

▇▇▇▇ Withdrawal of the reference is a matter entirely to be heard and decided by the district court.[51] The district court may withdraw the reference of a proceeding "on its own motion or on timely motion of any party, for cause shown".[52] Since the bankruptcy court has spent so much time with the matter so far, the following comments are submitted for whatever use the district might want to make of them in connection with withdrawal of the reference.

The decisions regarding discretionary withdrawal of the reference are difficult to reconcile. However, the cases generally agree that if a matter is a core matter, the district court should be less inclined to withdraw the reference.[53]

... [I]n determining whether cause exists for withdrawing the reference, the court should consider the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, conservation of debtors' and creditors' resources, expediting the bankruptcy process, and the right to a jury trial.[54]

Since this adversary proceeding is a core matter, the district court might be less

---

50. In *Jensen,* the Fifth Circuit makes a like declaration. In agreeing with the result but disagreeing with the reasoning of *In re Hallahan,* 936 F.2d 1496 (7th Cir.1991) the Fifth Circuit wrote: "As we see it, the debtor was not entitled to a jury trial in Hallahan ... because the plaintiff had submitted his claim against the debtor to the equitable jurisdiction of the bankruptcy court. Filing a proof of claim denied both the plaintiff and the defendant, debtor, any right to jury trial that they otherwise might have had on that claim." *Jensen,* 946 F.2d at 374. This basis for denial of a jury trial to Hallahan applies *a fortiori* to Walker. In Hallahan, a *creditor's* submission of a claim to the summary jurisdiction of the bankruptcy court denied the *debtor* a jury trial. Walker, on the other hand, has *himself* made numerous submissions of his actions to the summary jurisdiction of the bankruptcy court.

51. Federal Rules of Bankruptcy Procedure 5011.

52. 28 U.S.C. § 157(d). "Section 157(d) is an attempt to insulate the 1984 legislation against successful constitutional attack.... [C]ause must be shown. The cause prerequisite seems inconsistent with the theory that the power to withdraw is a constitutional requirement." *Collier's on Bankruptcy, 15th Ed. Rev.,* ¶ 3.04.

53. *See Orion Pictures Corp. v. Showtime Networks, Inc.,* 4 F.3d 1095 (2nd Cir.1993).

54. *Collier's on Bankruptcy, 15th Ed. Rev.,* ¶ 3.04, citing *Holland America Ins. Co. v. Succession of Roy,* 777 F.2d 992 (5th Cir.1985).

inclined to withdraw the reference. With respect to jury trial rights, if the district court concludes, that this Court is incorrect and that Walker *is* entitled to a jury trial, the district court might decide to withdraw the reference immediately for all remaining pretrial issues or the district court might decide to withdraw the reference only when the case is ready for trial. By withdrawing the reference, the district court can afford the Seventh Amendment right, if it exists.

With respect to Walker's apparent concern that I have formed an opinion about the ultimate disposition of this case, I would inform the district court that I have not formed a conclusion about the ultimate disposition of this case. There are very unusual and unreconciled facts apparent to me. That is why I gave Walker an opportunity to explain them. He declined to do so, citing the Fifth Amendment. If he would like to explain them, I am ready to listen.

I will ask the Clerk to forward this matter to the district court for a determination of whether to withdraw the reference.