**In re George DIETERT, Debtor.**

**George Dietert, Plaintiff,**

**v.**

**Alberto M. Dietert and Michelle Dietert, Defendants.**

**Bankruptcy No. 00–50389–L2–11. Adversary No. 01–5001.**

United States Bankruptcy Court, S.D. Texas, Laredo Division.

Jan. 9, 2002.

A. Confrel–Meurer, Laredo, TX, for debtor.

Nathanial Holzer, Fort Worth, TX, for plaintiff.

Tony Ramos, Laredo, TX, for Albert and Michelle Dietert.

## MEMORANDUM OPINION CONCERNING SCHEDULING ORDER CONCERNING DETERMINATION OF CLAIMS OF ALBERT AND MICHELLE DIETERT (claims # 14 & 18)

WESLEY W. STEEN, Bankruptcy Judge.

This bankruptcy case involves a dispute among family members that is especially aggravated and is being litigated especially vigorously. Prior to the filing of the bankruptcy case, litigation was filed in state court; that litigation has since been removed to the bankruptcy court. The Debtor has obtained the requisite vote of other creditors to a chapter 11 plan, but confirmation of the plan (and payment of claims of a substantial number of other creditors) has been delayed by the obsessive family dispute. Not only are payments to other creditors delayed pending resolution of the family dispute, but substantial continuing litigation expenses deplete the funds available to the Debtor and to other creditors. Therefore, this order is intended to expedite the conclusion of this case.

1. *The following facts are stipulated by Albert and Michelle Dietert and by George Dietert.*[1]

George Robert Dietert ("Debtor" or "Robert") is the son of Albert Dietert ("Albert") and a brother of Michelle Dietert ("Michelle"). Prior to January 1996, Robert was employed by his father in the oil field service business, "Double D Rentals" and "D & D Oilfield Service." On February 2, 1996, for reasons that are not completely undisputed, Robert initiated a sole proprietorship under the trade name of "Circle D Rentals." To enable establishment of the new business, Albert transferred physical possession of various items of equipment to Robert. Some of the equipment was lien free but other equipment was burdened with security interests and/or liens. Robert made payments on the liens. He was involved in the actual business operations and services of Circle D Rentals; Albert handled office matters including bank accounts, deposits and payments, and other activities.

In 1999 a dispute arose between father and son. Their business relationship terminated and Robert was evicted from the business premises. Albert took control and custody of some or all the equipment.

On August 20, 1999, Robert filed a lawsuit against Albert and Michelle in the

---

1. Joint Pretrial Order filed by the parties in 01–5001.

49th District Court of Zapata County, Cause No. 4549. Robert alleged conversion and sought return of equipment and other assets, a restraining order, and a preliminary injunction. Albert and Michelle filed a general denial, which was amended by their attorney on May 4, 2001, after the suit was removed to the bankruptcy court. The amended answer presented counterclaims against Robert.

On October 24, 2000, Robert filed for protection under Chapter 11 of the Bankruptcy Code. As noted above, the state case in Zapata County was removed to the bankruptcy court. It was given Docket Number 00–5001.

2. *The following claims are made by Albert and by Michelle:* [2]

On March 20, 2001, Michelle filed proof of claim number 14. The claim states that the debt was incurred by Robert in favor of Michelle from August 1996 through August 1999. The "Basis for Claim" is stated as "Described in Adversary Proceeding." The claim is for "Unknown" amount and is unliquidated. On the same date, Albert filed a virtually identical claim. It bears emphasis that the basis for Albert's claim and Michelle's claim against the estate is coextensive with their counterclaim in the adversary proceeding. Robert's claim in that adversary proceeding, as well as Albert and Michelle's counterclaim, (both set forth more fully below) involve the business being reorganized in this bankruptcy case.

Albert contends that Robert breached his agreement to pay Albert a monthly salary or "draw" of $4,500.00, and therefore owes Albert the approximate amount of $162,000.00 (less any sums that Albert paid himself from the business). In the alternative, Albert contends that he rendered valuable services to Robert d/b/a Circle D Rentals, including being in charge of day to day operations, handling money, writing checks, and generally running the business. Since Robert allegedly accepted these services and benefitted from them, Albert contends that he has a claim against Robert and this bankruptcy estate in the amount set forth above.

Michelle claims that she is the owner of a number of vehicles and some equipment which Robert contends is property of the bankruptcy estate. Michelle contends that Albert transferred title of the equipment to her, not Robert. She acknowledges that Albert gave Robert physical possession of the equipment but she alleges that she and Robert entered into a verbal agreement under which Michelle would permit Robert to use the vehicles and equipment in his business, Circle D Rentals. Robert allegedly agreed to pay Michelle 40% of gross income received from the use of said vehicles and further agreed to take good care of said vehicles and to keep all said vehicles insured. Robert allegedly further agreed to make all payments on those vehicles that were encumbered and such payments would be credited to the 40% of gross income due Michelle. Michelle alleges that she allowed Robert to keep the equipment by virtue of this agreement. Michelle and Robert dispute ownership of the equipment and they dispute who owes whom.

Michelle also contends that she lent $26,605.00 to Robert on or about August 1998 through December 1998. Robert has allegedly failed to repay such sums. Michelle also makes claims against Robert for breach of contract, unjust enrichment, and attorneys fees.

**2.** *Id.*

3. *The following contested allegations are made by Robert:* [3]

Robert's version of the reason for restructuring the business differs from his father's version. Robert contends that in the fall of 1995, his father was experiencing IRS problems and therefore offered to transfer equipment to Robert (not Michelle) for operation of the oil field service business in Robert's name. The agreement allegedly contemplated that Robert would assume payment of the outstanding indebtedness on the equipment. In return for the transfer of the equipment, Albert would continue to work for Robert in running the office, making deposits, paying expenses of operation, and making calls to potential customers. Robert contends that his father threw him out of the office and kept possession of the equipment when they parted ways in 1999. The state court suit, filed in 1999 and removed to this bankruptcy court, is the vehicle for resolution of all these issues.

Robert contends that Albert withdrew, or was beneficiary of funds that were withdrawn from Circle D Rentals between February 1996—August 1999, in the aggregate sum of $583,292.77.

Robert contends that funds withdrawn from the Circle D Rentals account, and used for the benefit of Michelle and owed to Robert by Michelle aggregate $113,902.86.

Robert further contends that after Albert evicted him from the business premises, Albert has disposed of equipment in violation of the law. Robert conducted an inspection of equipment under orders of this court, which inspection revealed that some of the equipment was not at Albert's premises, and no information regarding its whereabouts was given.

Robert asserts that he is entitled to all the equipment and that Albert's claim has no value; further Robert asserts that Michelle's claim, if any, is substantially reduced.

4. *Status of the case and of the family dispute:*

As noted, the bankruptcy case was filed October 24, 2000. Scheduling orders for plan confirmation have been issued by the Court. Robert appears to have reached agreement on a plan of reorganization with the IRS and with 9 secured creditors. The unsecured creditors have voted in favor of the plan. The issue holding up this case is the family dispute.

The Court cannot confirm the plan, or deny confirmation, until the Court knows the extent of liabilities, most of which are the alleged claims of Albert and Michelle and until the court can resolve entitlement to possession of the equipment by determining whether it is property of the estate. Until the plan is confirmed, payments to creditors are held up [4] and substantial chapter 11 expenses, including attorneys fees and U.S. Trustee's fees continue.

The family dispute involves two procedural vehicles. First, there is the claim of Albert and Michelle against Robert. Bankruptcy Code section 502 governs allowance or disallowance of those claims. The claims will be discharged under Bankruptcy Code section 1141(d)(A) if they are not allowed. As discussed more fully below, the bankruptcy process provides for objections to claims, which objections are treated as contested matters, determined in summary proceedings by the bankruptcy judge without a jury. The documents (proofs of claim) filed by Albert and Mi-

---

**3.** *Id.*

**4.** Except for adequate protection payments to secured creditors.

chelle define their claims by reference to the adversary proceeding. Second, there is the adversary proceeding, the state court proceeding removed to the bankruptcy court in which Robert seeks a money judgment and seeks title and possession of certain equipment and in which Albert and Michelle have filed a counterclaim against Robert. All claims are prepetition claims.

In previous orders, the undersigned bankruptcy judge had tried to jointly administer the contested matter and the adversary proceeding, principally to avoid prejudicing substantive rights by an adjudication of Albert and Michelle's claims against the estate without a concurrent adjudication of Robert's claims against them. That process appeared to be relatively on track. Albert and Michelle had demanded a jury trial, but had consented to a jury trial before the bankruptcy judge, and on June 21, 2001, Albert and Michelle represented to the Court that they would file a written consent. The undersigned bankruptcy judge had scheduled the proof of claim, the objection to claim, and all matters in the adversary proceeding to be tried together before a jury.

Notwithstanding verbal consent and agreement on June, 21, Albert and Michelle never filed a written consent to jury trial before the bankruptcy judge. On August 17, 2001, Albert and Michelle stated that they withdrew their consent to the bankruptcy judge conducting a jury trial.

The problem now addressed by the Court is how to proceed with this bankruptcy case and adversary proceeding, especially since there is no way to know when the District Court might be able to afford a jury trial.

Seventh Amendment Right to Jury Trial

Prior to 1979, there was extensive litigation in bankruptcy cases to determine whether a dispute was within the summary jurisdiction or the plenary jurisdiction of the district court. Bankruptcy judges could only exercise the summary jurisdiction of the court, which was generally viewed as including administrative matters and matters involving division of the estate, which was considered to be within the actual or constructive possession of the court. In *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966), Justice White wrote:

> The crux of the dispute here concerns the mode of procedure for trying out the preference issue. The bankruptcy courts are expressly invested by statute with original jurisdiction to conduct proceedings under the Bankruptcy Act. These courts are essentially courts of equity and they characteristically proceed in summary fashion to deal with the assets of the bankrupt they are administering. The bankruptcy courts 'have summary jurisdiction to adjudicate controversies relating to property over which they have actual or constructive possession.' They also deal in a summary way with 'matters of an administrative character, including questions between the bankrupt and his creditors, which are presented in the ordinary course of the administration of the bankrupt's estate.' This is elementary bankruptcy law .... *Katchen*, 382 U.S. at 326–327, 86 S.Ct. 467 (footnote and citations omitted).

In *Katchen*, the Court held that if a creditor filed a proof of claim in the bankruptcy case, the bankruptcy referee had summary jurisdiction to adjudicate the trustee's assertion of a right to recover a preferential, pre-petition payment to that creditor. The Court held that the referee had jurisdiction both to rule that the creditor could receive no payment from the estate (until the preference had been repaid) *and* to award an affirmative judg-

ment against the creditor for return of the preferential payment.

In support of summary jurisdiction to adjudicate objections to claims and attendant counterclaims, the Court found that Congress intended rapid adjudication of claims against a bankruptcy estate:

> When Congress enacted general revisions of the bankruptcy laws in 1898 and 1938, it gave 'special attention to the subject of making (the bankruptcy laws) inexpensive in (their) administration.' Moreover, this Court has long recognized that a chief purpose of the bankruptcy laws is 'to secure a prompt and effectual administration and settlement of the estate of all bankrupts within a limited period,' and that provision for summary disposition, 'without regard to usual modes of trial attended by some necessary delay,' is one of the means chosen by Congress to effectuate that purpose. *Katchen*, 382 U.S. at 328–329, 86 S.Ct. 467 (citations omitted).

In footnote 9, the *Katchen* decision emphasized that the referee's authority to award affirmative relief results from the preclusive effect of summary adjudication of facts in the process of adjudication of the objection to claim. The Court concluded that the referee had summary jurisdiction to adjudicate an objection to a claim, that all matters necessarily adjudicated in that determination became *res judicata*, and that therefore the referee had jurisdiction to award affirmative relief to the extent that all elements necessary to determine entitlement to that relief had been definitively adjudicated in the claims objection process. The Court declined to consider whether the referee's summary jurisdiction might extend to award further affirmative relief against a creditor who filed a proof of claim.

> We ... hold that determination of objections to claims, whether or not affirmative relief is decreed, does not constitute adjudication of a suit by the trustee, and thus it is not necessary to ascertain whether the creditor has 'consented' to such determination .... Rather, our decision is governed by the 'traditional' bankruptcy law that he who invokes the aid of the bankruptcy court by offering a proof of claim and demanding its allowance must abide the consequences of that procedure. As this is the basis of our decision, we obviously intimate no opinion concerning whether the referee has summary jurisdiction to adjudicate a demand by the trustee for affirmative relief, all of the substantial factual and legal bases for which have not been disposed of in passing on objections to the claim. *Katchen*, 382 U.S. at 333, 86 S.Ct. 467 (citations omitted).

> Thus, once a bankruptcy court has dealt with the preference issue nothing remains for adjudication in a plenary suit. The normal rules of res judicata and collateral estoppel apply to the decisions of bankruptcy courts. *Id.* at 334, 86 S.Ct. 467 (citations omitted).

The *Katchen* court then addressed the issue of the right to jury trial under the Seventh Amendment. The Court held that determination of objections to claims in bankruptcy cases are equitable proceedings triable in the summary jurisdiction of the bankruptcy court and that this is constitutionally permissible as an exercise of Congress' authority under Article I, Section 8 to establish uniform laws on the subject of bankruptcy. The Court then held that these summary proceedings were within the equity jurisdiction of the bankruptcy court because they involve a determination of entitlement to a share of a *res*, the bankruptcy estate. Since the proceeding is equitable in nature, there is no right to jury trial.

As bankruptcy courts have summary jurisdiction to adjudicate controversies relating to property over which they have actual or constructive possession, and as the proceedings of bankruptcy courts are inherently proceedings in equity, there is no Seventh Amendment right to a jury trial for determination of objections to claims, .... *Katchen*, 382 U.S. at 336–337, 86 S.Ct. 467 (citations omitted).

Finally, the Court addressed whether the bankruptcy court should abstain or abate proceedings on objections to claims to avoid *res judicata* or collateral estoppel consequences and to allow a plenary action to proceed on the legal claim for affirmative relief. The Court held that the bankruptcy court had the authority to do so, but generally should not.

We think that Congress intended the trustee's ... objection to be summarily determined; and to say that because the trustee could bring an independent suit against the creditor to recover his voidable preference, he is not entitled to have his statutory objection to the claim tried in the bankruptcy court in the normal manner is to dismember a scheme which Congress has prescribed.... To implement congressional intent, we think it essential to hold that the bankruptcy court may summarily adjudicate the ... objection; and, as we have held above, the power to adjudicate the objection carries with it the power to order surrender of the preference. *Katchen*, 382 U.S. at 339–340, 86 S.Ct. 467 (citations omitted).

Earlier, in *Schoenthal v. Irving Trust Co.*, 287 U.S. 92, 53 S.Ct. 50, 77 L.Ed. 185 (1932), the Court had held that if a creditor does not file a proof of claim, a bankruptcy trustee cannot proceed in equity to recover a preferential transfer because an adequate remedy exists at law. In *Katch-*

*en*, the Court obviously concluded that when the creditor does file a proof of claim, adjudication on objections to the proof of claim, including adjudication of affirmative relief on the preference, could proceed in equity, notwithstanding the adequate remedy in law, because rapid equitable proceedings are necessary to fulfill congressional purpose.

Congress rewrote bankruptcy law, and federal jurisdiction over bankruptcy cases, in 1978 and again (after the Supreme Court declared the 1978 jurisdictional scheme unconstitutional) in 1984.

The 1978 Act abolished the statutory distinction between plenary and summary bankruptcy proceedings, on which the Court relied in *Schoenthal* and *Katchen*.... [I]n the 1984 Amendments Congress drew a new distinction between "core" and "non-core" proceedings .... *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 60, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989).

In *Granfinanciera*, the Supreme Court held that a creditor who did not file a proof of claim in a bankruptcy case had a right to a jury trial when sued by the bankruptcy trustee to recover a fraudulent conveyance. The majority opinion distinguished *Granfinanciera* from *Katchen* on the facts that the creditor had filed a proof of claim in *Katchen*, but the creditor in *Granfinanciera* had not. But the vigorous debate between the majority opinion and the dissent in *Granfinanciera* left substantial doubt about the continued viability of *Katchen*. Some of that doubt was resolved in *Langenkamp v. Culp*, 498 U.S. 42, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990), which held that a creditor who *did* file a proof of claim in a bankruptcy case did *not* have a right to a jury trial with respect to a preference action because the filing of a proof of claim triggers the process of al-

lowance and disallowance of claims that is heard only in equity.

> In *Granfinanciera* we recognized that by filing a claim against a bankruptcy estate the creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power. *Langenkamp*, 498 U.S. at 44, 111 S.Ct. 330 (citations omitted).

But, in *Langenkamp*, the Court emphasized that it was dealing with a preference action. Commentators have questioned whether the same result applies to counterclaims that do not involve the trustee's avoiding powers:

> Each of the three Supreme Court cases speaking to the waiver effected by filing a proof of claim—*Katchen v. Landy*, *Granfinanciera*, and *Langenkamp v. Culp*—involved avoiding power counterclaims. It is not surprising that the Court found the counterclaims to be part of the claims allowance process; a claim cannot be allowed if the claimant has not returned property conveyed by the debtor in an avoidable transaction. Whether the same is true of other types of counterclaims is less clear.[5]

Indeed, literally hundreds of published opinions have tried to determine the extent of the waiver of the right to jury trial that results from a creditor filing a proof of claim. For example, in *Germain v. Connecticut Nat. Bank*, 988 F.2d 1323 (2nd Cir.1993), the court held that a trustee had a right to jury trial on a lender liability claim against a creditor who had filed a proof of claim. In that case, it was the creditor who sought to avoid the jury trial by arguing that the right to jury trial for all parties was waived when the creditor filed its proof of claim. The Second Circuit held that the trustee's right to jury

trial was not waived by the creditor filing a proof of claim for a pre-petition debt. Perhaps it was important in *Germain* that the lender's proof of claim was a *pre-petition* claim, but the lender liability action involved allegations of *post*-bankruptcy lender misconduct. Therefore, it is questionable whether the decision actually adjudicates jury trial rights with respect to objections to allowance of a claim. In *In re Jensen*, 946 F.2d 369 (5th Cir.1991), the court held that a *debtor* does not waive its right to jury trial on a pre-petition claim merely by filing a bankruptcy petition. It does not appear that the defendant was a creditor or that it had filed a proof of claim. However, the court cited, with approval, the decision of the Seventh Circuit which held that a debtor did not have a right to a jury trial on a creditor's objection to discharge if the creditor has filed a proof of claim. The Fifth Circuit stated:

> [T]he debtor was not entitled to a jury trial in *Hallahan*, not because the debtor had filed a petition in bankruptcy, but because the plaintiff had submitted his claim against the debtor to the equitable jurisdiction of the bankruptcy court. *Filing a proof of claim denied both the plaintiff and the defendant, debtor, any right to a jury trial that they otherwise might have had on that claim.* *Jensen*, 946 F.2d at 374 (emphasis added).

The enormous number of cases attempting to apply the Seventh Amendment to bankruptcy cases cannot be reconciled. Some have tried to distinguish between compulsory and permissive counterclaims. Others have focused on classification of the matters as within the core or non-core jurisdiction of the bankruptcy court. There are many other distinctions.

Perhaps the best approach is to return to the origins, *Katchen*, and to reason to a conclusion of the jury trial issue from what is reaffirmed from that opinion. Contrary

---

**5.** *Collier on Bankruptcy*, ¶ 3.08[2] (15th ed.2001).

to *Collier's* speculation, *Katchen* was not based on the fact that the preference is a trustee avoidance action. The underpinning of *Katchen* was the waiver by a creditor of jury trial rights with respect to any issues necessary to adjudicate its claim (and objections to its claim) and the *res judicata* and collateral estoppel effect of any determinations made during that process. Notwithstanding Justice White's dissent, the majority in *Granfinanciera*, and *Langenkamp* insist that *Katchen* is not overruled; the significance of the waiver by the creditor is re-emphasized in *Langenkamp*. In addition, *Granfinanciera* recognizes that the congressional objective of speed and efficiency for bankruptcy proceedings is continued in the new jurisdictional scheme, and indeed applies *a fortiori* to the new legislation.[6]

■ One can reconcile the Supreme Court decisions, with guidance for decision of this case, as follows: if a creditor files a proof of claim in a bankruptcy case, the bankruptcy court should proceed with all dispatch to determine any objections to that claim, notwithstanding the fact that some of the objections to the claim might constitute separate actions at law if the creditor had not filed a proof of claim. The creditor does not have a right to a jury trial with respect to determination of the creditor's claim against the estate or with respect to any objections to the claim. The objections to the claim, even to the extent that they constitute a counterclaim for affirmative relief that exceeds the creditor's claim, can be adjudicated by the bankruptcy judge without a jury and the bankruptcy judge can award a judgment for affirmative relief against the creditor if, and only if, all elements necessary to adjudication of the counterclaim are part of the adjudication of the objection to claim. The creditor retains a right to a

jury trial with respect to any issue that need not be adjudicated as part of the allowance of the claim or an objection to the claim. In any event, the consequences of *res judicata* and collateral estoppel apply to the bankruptcy judge's adjudication. Although the bankruptcy court has the authority to stay its proceedings to allow actions at law to proceed before a jury, it should not do so, especially when speedy and economical adjudication requires that the court proceed with determination of the creditor's claim and any counterclaim.

### Conclusions Concerning Albert & Michelle's Right to Jury Trial

■ Robert's counterclaims against Albert and Michelle appear to be coextensive with Robert's objections to the proofs of claim filed by Albert and Michelle. Therefore, to effectuate the congressional objectives set forth above, as applied to the status of this case as set forth above, the Court will conduct expedited hearings on allowance of Albert and Michelle's claims and will adjudicate the counterclaims to the extent that all elements essential to determination of those claims are determined as part of the claims allowance/objection process. If any element of Robert's claim is not determined as part of the claims allowance/objection process, the Court will remand the remaining matters to state court or refer the remainder to the district court for jury trial. Because the proofs of claim incorporate the counterclaims by reference, and because until recently the parties have always treated the adversary pleadings as defining Albert and Michelle's claims, Robert's objections to those claims, and Robert's counterclaims, the Court will treat the pleadings in the adversary proceeding as defining the dispute.

---

6. *See* footnote 16 of the majority opinion, agreeing with footnote 4 of Justice White's dissent. *See Granfinanciera*, 492 U.S. at 63 n. 16 and 75 n. 4, 109 S.Ct. 2782.

Separate Scheduling Order

The Court has, with consent of the parties, previously appointed Baum, Mejia & Co. P.L.L.C. as the Court's expert to examine the documentation and to report to the Court with analysis of those claims. The Court has delayed the commencement of that work pending a determination of the right to jury trial. The Court has, today, by separate order, authorized Mr. Mejia to begin that work.

On November 9, 2001, Albert and Michelle filed a motion for withdrawal of their $6,000 (approximately 1/2 of the expert's fee) from escrow. That motion has, by separate order, been denied because of the conclusions in this order.

The expert will not be able to complete his report in time for the estimation of claim scheduled for January 30, 2002. Therefore, by separate order that trial is cancelled and a scheduling conference is scheduled for January 30, 2002, at 1:00 PM. At that scheduling conference, the Court will determine when the trial can be conducted.