Paula ROBNETT, Appellant,

v.

THE KIRKLIN LAW FIRM, Appellee.

No. 01–03–00561–CV.

Court of Appeals of Texas, Houston (1st Dist.).

June 2, 2005.

Lennon C. Wright, Law Offices of Lennon C. Wright, Houston, TX, for Appellant.

Stephen R. Kirklin and Charles B. Kirklin, The Kirklin Law Firm, P.C., Friendswood, TX, for Appellee.

Panel consists of Justices TAFT, ALCALA, and HIGLEY.

## OPINION

ELSA ALCALA, Justice.

This dispute concerns competing rights to attorney's fees under contingency-fee contracts that appellant, Paula Robnett, referred to appellee, the Kirklin Law Firm (the firm), at least one of which the firm, in turn, referred to a third law firm. The firm prevailed by summary judgment after intervening in the trial-court cause, the "Thomas" case,[1] seeking a declaration that it was entitled to attorney's fees in that lawsuit and in a second action, the "Trutec" case.[2] Appellant, Paula Robnett, opposed the firm's intervention and claimed competing rights to the fees. The firm opposed Robnett's challenge and sought traditional summary judgment on its intervention claim on the grounds that, when

---

1. The trial-court cause was a wrongful death and personal injury action, *Venus Thomas, individually and as Representative of the Estate of Daizhane Jaime Price, and Alfred Price, Sr., individually v. Henry Parker,* Cause No.2000–45780, in the 333rd District Court of Harris County, Texas. We will refer to this case as the "Thomas" case.

2. The related action was pending in the 152nd District Court of Harris County as Cause No. 200016476 and involved Sam Ariyo, Trutec Investment Services Company Limited, Martindale Associates, Limited, and Trutec Oil & Gas, Inc. We will refer to the related action as the "Trutec" case.

Robnett signed the initial, contingency-fee contracts in both cases, her license to practice law in Texas had been suspended for nonpayment of her attorney-occupation tax and for failing to meet requirements under the Texas Guaranteed Student Loan Program. The trial court rendered summary judgment in favor of the firm and enjoined Robnett from seeking attorney's fees from her former clients in both cases.[3] In rendering summary judgment, the trial court ruled that Robnett was not retroactively reinstated when she executed the contingency-fee contracts in either the Thomas case or the Trutec case, that the firm was entitled to $15,542.13, or one-half of the funds deposited in the court's registry, and that Robnett could not seek attorney's fees in the Thomas case and was not entitled to receive any attorney's fees in the Trutec case.

Robnett challenges the summary judgment in five issues. She argues that her bar memberships were reinstated retroactively as a matter of law, and that her initial, contingency-fee contracts were therefore valid, which precludes summary judgment in favor of the firm. She also contends that the firm had no standing to challenge the validity of her initial contract because her former clients in the Thomas case later ratified their initial, contingency-fee contract; she contends, alternatively, that whether her former clients ratified their earlier contract presents a factual dispute that precluded summary judgment. Finally, Robnett contends that the trial court improperly enjoined her from seeking referral fees under her initial contracts.

We hold that Robnett's bar-membership suspensions were not retroactively rein-

stated; that her contingency-fee contracts in both the Thomas and Trutec cases, which were signed during two periods of suspended licensure, were therefore void; and that Robnett did not timely present her remaining issues to the trial court. Because the firm established its right to summary judgment as a matter of law, we affirm.

### Undisputed Facts and Procedural History

Robnett and her former clients, the plaintiffs in the trial-court cause, the Thomas case, signed their initial, 40% contingency-fee contract on October 19, 1998. When she signed the contract, however, Robnett had been suspended from practicing since September 1, 1998 for nonpayment of attorney's occupation tax. *See* TEX. TAX CODE ANN. § 191.1441 (Vernon 2002); *see also* STATE BAR R. art. III, § 8, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon 2005) (State Bar Rules confirming requirements and penalties). Robnett was not reinstated for this violation until October 30, 1998. Robnett and her former clients in the Trutec case signed their initial, contingency-fee contract in that case on January 27, 2000. Two days earlier, however, on January 25, 2000, Robnett was suspended from practicing law for noncompliance with Supreme Court of Texas rules governing minimum repayment requirements under the Texas Guaranteed Student Loan program. *See* TEX. GOV'T CODE ANN. § 82.022(c) (Vernon 2005); Order of the Supreme Court of Texas, June 18, 59 TEX. B.J. 844 (1996). Robnett was not licensed, therefore, and was precluded from practicing law when she signed both contracts.[4] Both the

---

3. Because the parties to the trial-court cause had previously settled, the summary judgment became a final, appealable judgment.

4. *See* TEX. PEN.CODE ANN. §§ 38.122–.123 (Vernon 2003); *see also Satterwhite v. State,* 979 S.W.2d 626, 628–29 (Tex.Crim.App.1998) (construing section 38.122 of Penal Code in

Thomas contract and the Trutec contract authorize attorney's fee sharing, through provisions permitting involvement of other attorneys to prosecute the respective claims.

On February 20, 2001, the firm and Robnett negotiated a letter agreement to split, equally, the 40% contingency-based attorney's fees relating to the Thomas case. Under the agreement, the firm would thereafter advance the necessary expenses of the litigation to Robnett's former clients. On the same day, Robnett transferred the entire case to the firm, and the firm agreed to pay Robnett one-half of the 40% contingency fees.

Robnett and the firm executed a similar agreement, on January 22, 2001, to share attorney's fees in the Trutec case. Robnett's client in the Trutec case terminated the contract with Robnett on November 13, 2001, however, and, on the same day, the firm notified Robnett that it would not share fees with her, as contemplated by the January 22, 2001 agreement.

On January 14, 2002, Robnett's clients in the Thomas case terminated their contracts with both Robnett and the firm and hired new counsel. Despite the competing claims for attorney's fees asserted by Robnett and the firm, new counsel settled the case. Pursuant to the order of the trial court, defense counsel for Thomas deposited $31,084.26 into the trial-court registry pending resolution of the competing claims to that sum under the firm's intervention claim and Robnett's counterclaim.

The firm moved for traditional summary judgment on the grounds that Robnett had fraudulently induced the firm to undertake duties imposed by her initial, contingency-

fee contracts in both the Thomas and Trutec cases because, unknown to the firm, Robnett had been suspended from practicing law when those contracts were executed, which invalidated those contracts as a matter of law. The firm requested that Robnett be precluded from asserting any rights under the contracts. The firm supplied verified, summary judgment proof, in the form of documentary evidence of Robnett's suspensions, provided by the Supreme Court of Texas, which showed that Robnett was not reinstated until after each of the contracts had been executed. The firm also provided verified proof of the following: Robnett's former clients in the Trutec case had terminated their contract with her on November 13, 2001, the firm disclaimed any obligation to Robnett for the Trutec case on the same date, and Robnett's former clients in the Thomas case terminated their contract with her on January 14, 2002.

Robnett timely responded to the firm's motion for summary judgment by acknowledging that she had been "administratively suspended" on several occasions, but claimed that she was consistently reinstated retroactively, pursuant to section 7 of the State Bar Rules. *See* STATE BAR R. art. III, § 7(A), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon 2005) (providing for retroactive restoration of former status on removal of default for "nonpayment of dues or assessments").[5] Robnett also argued, in the alternative, that even disbarred attorneys may recover referral fees under Texas law.

The firm's motion for summary judgment was set to be heard on October 25, 2002. On October 26, 2002, the plaintiffs

context of noncompliance with bar-dues requirement of State Bar Rules).

5. Robnett also claimed, incorrectly, that she executed the fee agreements in the Thomas and Trutec cases when she was not under suspension.

in the Thomas case signed a settlement agreement for their wrongful death and personal injury claims, in which they also covenanted not to sue the firm or its principals concerning their representation. Robnett and the firm signed the settlement agreement. In January 2003, the trial court ordered that funds be deposited into the registry of the court and that funds due to the Thomas plaintiffs under the settlement be released. Certain funds remained in the court registry pending resolution of the fee dispute between Robnett and the firm.

The trial court rendered summary judgment on February 27, 2003. On the same day, without having sought leave to file a late response, Robnett filed her supplemental response to the firm's motion for summary judgment.

### Standard of Review

In moving for summary judgment under rule 166a(a) on its intervention claim, the firm had the burden to prove that it was entitled to judgment by establishing each element of its claim or defense as a matter of law, or by negating an element of the claim or defense of the opposing party, in this case, Robnett, as a matter of law. *See* Tex.R. Civ. P. 166a(a)—(b) (comment). Summary judgment is proper only when the movant establishes that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Rhône–Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 222 (Tex.1999); *Jones v. Legal Copy, Inc.,* 846 S.W.2d 922, 924 (Tex.App.-Houston [1st Dist.] 1993, no writ). In reviewing a summary judgment, we assume that all evidence favorable to the non-movant is true, *Walker v. Harris,* 924 S.W.2d 375, 377 (Tex.1996), and indulge every reason-

able inference and resolve any reasonable doubt in the non-movant's favor. *Science Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex.1997); *Jones,* 846 S.W.2d at 924.

Once the movant establishes that it is entitled to summary judgment, the non-movant can defeat that showing only by producing evidence that raises a fact issue. *Walker,* 924 S.W.2d at 377; *Haight v. Savoy Apartments,* 814 S.W.2d 849, 851 (Tex. App.-Houston [1st Dist.] 1991, writ denied).

### Retroactive Reinstatement—Validity of Initial Contracts

**A. Retroactivity of Reinstatements Following Suspensions for Nonpayment of Student Loans and Attorney–Occupation Tax**

■ Robnett's first issue challenges the trial court's rulings by claiming that her reinstatements on October 30, 1998 and February 18, 2000 operated retroactively and therefore validated the contingency-fee contracts that she executed with her former clients in the Thomas and Trutec cases.

Robnett bases her contention that she was reinstated retroactively on article III, section 7 of the State Bar Rules. *See* State Bar R. art. III, § 7(A), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G app. A. Section III of the rules pertains only to membership in the bar and imposes a duty to pay membership fees. *Id.* art. III, § 3. Section 5 of article III provides for suspension of a member of the bar who is in default of payment of membership fees or any assessment levied by the Supreme Court of Texas [6] and further provides that "[a]ny practice of law during such suspen-

**6.** Pursuant to article I(9) of the rules, references to "Court" in the rules means the Supreme Court of Texas. State Bar R. art. I(9),

*reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G app. A (Vernon 2005).

sion shall constitute professional misconduct and subject the member to discipline." Id. art. III, § 5. Section 7(A) of article III, however, provides that when an attorney remedies her suspension for nonpayment by removing the default, as provided in section 7, "the suspension shall automatically be lifted and the member restored to former status ... retroactive to inception of suspension," but without affecting any disciplinary proceedings. Id. art. III, § 7(A); see Satterwhite v. State, 979 S.W.2d 626, 628–29 (Tex.Crim.App. 1998). Article XII of the State Bar Rules contains similar provisions for retroactive reinstatement for suspensions premised on noncompliance with minimum continuing legal education requirements (MCLE). See STATE BAR R. art. XII, §§ 8, 10, reprinted in TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon 2005).

Robnett concedes that she was suspended from the practice of law when she entered into the contingency-fee contracts for the Thomas and Trutec cases. She also recognizes that the suspensions on which the firm relied in challenging the validity of the contracts she assigned to the firm derive from her failure to pay her attorney-occupation tax and her lack of compliance with the Guaranteed Student Loan Program and were not premised on either nonpayment of dues and assessments required by article III of the State Bar Rules or on her noncompliance with the MCLE requirements imposed by article XII of the rules. Robnett argues, however, that her reinstatements after suspension for nonpayment of her attorney-occupation tax and student loans should also be treated as effecting retroactive reinstatement, in the same manner as reinstatements under article III, section 7(A) and article XII, section 10 of the State Bar Rules after suspension for nonpayment of dues and noncompliance with MCLE requirements. We disagree.

### 1. Reinstatement Following Suspension for Nonpayment of Attorney–Occupation Tax

Section 191.142 of the Tax Code imposes an annual tax of $200.00 on Texas lawyers, except those exempted by section 191.144. TEX. TAX CODE ANN. §§ 191.142(a)-(b), 191.144(1)-(2) (Vernon 2002). The Tax Code requires the supreme court to administer the tax and authorizes the supreme court to suspend noncomplying attorneys from the practice of law. TEX. TAX CODE ANN §§ 191.1431, 1441(a) (Vernon 2002). The statute also authorizes reinstatement as follows: "An attorney who is suspended under Subsection (a) [of section 1441] shall be reinstated on payment of the tax and any interest and penalties." Id. In contrast to the State Bar Rules governing reinstatement following suspension for nonpayment of dues or noncompliance with MCLE requirements, the Tax Code does not provide for retroactive reinstatement after suspension for nonpayment of the attorney-occupation tax. Consistent with the Tax Code provisions, article III, section 8(g) of the State Bar Rules also provides for reinstatement of the attorney suspended for nonpayment of the attorney-occupation tax "on payment of the tax and any interest and penalties," but does not provide for retroactive reinstatement. STATE BAR R. art. III, § 8(g).

In construing a statute, we must presume that the Legislature intended the entire statute to be effective, and that it intended a just and reasonable result. See TEX. GOV'T CODE ANN. § 311.021(2), (3) (Vernon 2005) (Code Construction Act); see also Fleming Foods of Texas, Inc. v. Rylander, 6 S.W.3d 278, 284 (Tex.1999) (noting, as "cardinal rule," that courts construing statutes give effect to intent of Legislature). In discerning legislative in-

tent, we may presume that omissions in newly enacted statutes are intentional. *In re Ament*, 890 S.W.2d 39, 41 (Tex.1994).

Robnett contends that the retroactivity provisions of article III, section 7(A) of the State Bar Rules should control here. We note, however, that under article III's default provisions, section 5, article III applies to "fees or any assessment levied by" the Supreme Court of Texas. STATE BAR R. art. III, § 5; *see* STATE BAR R. art. I(9) (defining "court"). Under the Tax Code, by contrast, the Legislature—not the supreme court—levies and assesses the attorney-occupation tax. *See* TEX. TAX CODE ANN § 191.142(b) (Vernon 2002). The supreme court's role under the Tax Code, therefore, is limited to administering collection of tax. *See* TEX. TAX CODE ANN § 191.1431; STATE BAR R. art. III, § 8.

Because neither the Tax Code nor the State Bar Rules provides for retroactive reinstatement for suspensions arising from nonpayment of attorney-occupation tax, we conclude that the trial court correctly ruled that Robnett was not retroactively reinstated on October 30, 1998, when the contingency-fee contract in the Thomas case was signed. Because Robnett was thus still suspended from the practice of law when the Thomas contract was signed, she had no authority to enter into that contract.

## 2. Reinstatement Following Suspension for Nonpayment of Student Loans

In extending rule-making authority to the supreme court for licensing attorneys, the Legislature authorized the court to adopt rules "relating to the nonrenewal of the license of a lawyer who is in default on a loan guaranteed under Chapter 57 [of the] Education Code, by the Texas Guaranteed Student Loan Corporation." TEX. GOV'T CODE ANN. § 82.022(c) (Vernon 2005).

The rules enacted by the supreme court pursuant to this authority require suspension and state as follows:

Unless the attorney submits satisfactory evidence of compliance, or establishes error, the attorney's license is suspended. The court will remove the suspension upon presentation of satisfactory evidence that the attorney has entered a repayment agreement on the defaulted loan(s).

Order of the Supreme Court of Texas, June 18, 1996, 59 TEX. B.J. 844 (1996).

Like the Tax Code and article III, section 8(g) of the State Bar Rules, the supreme court's order has no provision for retroactive reinstatement. The supreme court's order imposes no "fees or assessments" that might, arguably, trigger the retroactivity provisions of article III, section 7(A), but simply effects suspension with no provision for retroactive reinstatement. We again conclude, therefore, that Robnett relies mistakenly on article III, section 7(A)'s retroactivity provision. *See* STATE BAR R. art. III, § 5, art. I(9).

We hold that the trial court correctly ruled that Robnett remained under suspension from the practice of law and was not retroactively reinstated on January 27, 2000, when the contingency-fee contract in the Trutec case was signed.

We overrule Robnett's first issue.

### Right to Fees As a Matter of Law?

◼ In her fourth issue, Robnett alternatively contends that she is entitled, as a matter of law, to recover attorney's fees under the contingency-fee contracts that she generated, despite being suspended from the practice of law when she signed them, pursuant to *A.W. Wright & Assoc. v. Glover, Anderson, Chandler & Uzick, L.L.P.*, 993 S.W.2d 466 (Tex.App.-Houston [14th Dist.] 1999, pet. denied) and *Lee v.*

*Cherry,* 812 S.W.2d 361 (Tex.App.-Houston [14th Dist.] 1991, writ denied). Robnett's reliance on *A.W. Wright* and *Lee* is misplaced.

In *A.W. Wright,* our sister court recognized its prior holding in *Lee,* which upheld the rights of a disbarred attorney to receive attorney's fees negotiated before referring the case to a different law firm. *Id.* at 468 (citing *Lee,* 812 S.W.2d at 364). In *Lee,* the attorney seeking to enforce a referral-fee agreement had voluntarily resigned his law licence. *See id.* at 362. In each case, however, the attorney asserting a right to fees had completed his personal legal work on the case and relationship with the referred clients before becoming separated from the bar, by disbarment in *A.W. Wright,* and by voluntary relinquishment in *Lee. A.W. Wright,* 993 S.W.2d at 469; *Lee,* 812 S.W.2d at 363. Here, by contrast, Robnett initiated both the Thomas and Trutec contracts while suspended from the bar. Accordingly, the rule first enunciated in *Lee* and reaffirmed in *A.W. Wright* does not apply.

We overrule Robnett's fourth issue.

### Contentions Not Timely Presented to the Trial Court

Rule 166a(c) and settled law construing rule 166a(c) impose deadlines for filing a summary judgment motion and any response to the motion. *See* Tex.R. Civ. P. 166a(c); *see also Benchmark Bank v. Crowder,* 919 S.W.2d 657, 663 (Tex.1996) ("Summary judgment evidence may be filed late, but only with leave of court."); *INA of Texas v. Bryant,* 686 S.W.2d 614, 615 (Tex.1985) (presuming that trial court did not consider late-filed summary judgment response because summary judgment did not reflect that trial court granted leave to file).

The firm filed its motion for summary judgment on October 1, 2002, and set it for a hearing on October 25, 2002. Robnett timely filed her initial response, but did not file her supplemental response to the firm's motion until February 27, 2003. Although the attorney's-fee dispute was the only matter still pending after the parties to the Thomas case had settled in late December 2002, and although funds had been deposited into the court's registry and distributed pursuant to the trial court's orders in January 2003, nothing in the record suggests that Robnett had sought leave from the trial court when she late-filed her response on February 27, 2003, the same day on which the trial court rendered final summary judgment for the firm.

■ Robnett's second, third, and fifth issues assert evidentiary and substantive arguments from her late-filed supplemental response. In her second issue, Robnett relies on affidavits, provided by her former clients in the Thomas case, in support of Robnett's contention that summary judgment in favor of the firm was precluded because the former clients orally ratified their initial, contingency-fee contract with Robnett. Despite the allegations in the firm's pleadings, that Robnett fraudulently induced the firm to accept both the Thomas case and the Trutec case, by not disclosing that her license was suspended when both contracts were signed, Robnett contends, in her third issue, that the firm may not challenge the validity of the original contracts. Finally, although Robnett never asserted any objection or exception to the firm's reliance on the Trutec contract in support of its intervention claim and relied on the Trutec contract in refuting the firm's intervention claim, Robnett's fifth issue challenges the trial court's encompassing issues concerning Robnett's right to attorney's fees in the Trutec case in the final summary judgment.

Because Robnett did not timely present any of these contentions to the trial court and did not seek leave to present them, we may presume that the trial court did not consider her contentions in rendering summary judgment in favor of the firm. *See* TEX.R. CIV. P. 166a(c); *Crowder,* 919 S.W.2d at 663; *INA of Texas,* 686 S.W.2d at 615. Because we presume that the trial court did not consider them, we may not consider them as grounds for reversing the summary judgment. *See* TEX.R. CIV. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer, or other response shall not be considered on appeal as grounds for reversal.").

We overrule Robnett's second, third, and fifth issues.

### Conclusion

We affirm the judgment of the trial court.