**Affirmed in Part, Reversed and Remanded in Part, and Memorandum Opinion filed June 26, 2012.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-11-00152-CV
_____

**STEVEN FRANKOFF, Appellant**

**V.**

**SUSAN NORMAN AND MIKE EASTON, Appellees**

---

**On Appeal from the 157th District Court
Harris County, Texas
Trial Court Cause No. 2008-34994**

---

## MEMORANDUM OPINION

Appellant Steven Frankoff contends the trial court erred by (1) granting summary judgment in favor of appellee Susan Norman, (2) granting summary judgment in favor of appellee Mike Easton, and (3) denying Frankoff's partial no-evidence motion for summary judgment.   We reverse the trial court's grant of Norman's traditional motion for summary judgment and affirm the trial court's grant of Easton's no-evidence motion for summary

judgment. We overrule Frankoff's issues dealing with the trial court's denial of his motion for summary judgment because this court may not review that motion. We remand to the trial court for proceedings consistent with this opinion.

## BACKGROUND[1]

On April 14, 2003, Houston-based Equator Corporation borrowed $1.5 million from MetroBank. The note was personally guaranteed by Equator's owner—Atul Vir[2]—and his wife.

Equator subsequently encountered financial problems that it attributed to allegedly defective inventory acquired from Merloni. Equator retained Frankoff, an attorney, to bring suit against Merloni.[3] Frankoff filed suit on May 6, 2005. On August 16, 2005, Equator signed a settlement agreement with Merloni[4] under which Equator was to receive a total of $725,000; $375,000 payable immediately and $350,000 payable on January 15, 2006.[5]

At approximately the same time Equator brought suit against Merloni, MetroBank brought suit against Equator to recover on its note. Equator hired attorney Peter Riga to represent it in the MetroBank proceedings. Appellee Mike Easton was a paralegal working for Riga. MetroBank obtained summary judgment against Equator on July 20, 2005.[6]

---

[1] Frankoff's brief to this court does not contain a Statement of Facts as required by the Texas Rules of Appellate Procedure. *See* Tex. R. App. P. 38.1(g).

[2] Vir was also Equator's President and principal officer.

[3] There was a dispute concerning Frankoff's fee in the Equator-Merloni litigation. Vir apparently contended that Frankoff agreed to a $25,000 flat fee. However, there is also an agreement between Equator/Vir and Frankoff which purports to give Frankoff a 40% contingent fee.

[4] The Settlement Agreement was actually signed by "Indesit," which appears to be the Italian parent company of Merloni.

[5] The second installment was not actually paid until January 17, 2006.

[6] Norman contends that Frankoff's contingent fee agreement was faxed to Equator/Vir on August 5, 2005, and backdated to May 1, 2005 to insulate a large portion of the Merloni proceeds from

A dispute arose between Frankoff and Vir regarding Frankoff's fee for representing Equator in the Merloni suit. Frankoff hired appellee Susan Norman—also an attorney—to represent him. On January 30, 2006, Norman filed suit on behalf of Frankoff, styled *S. Soe, individually vs. Doe Corp.,* to recover Frankoff's alleged 40% contingent fee from the Merloni settlement.[7] Equator was represented again by Riga in the *Soe* action.[8]

On February 5, 2006, Equator filed a Chapter 11 bankruptcy petition. MetroBank claimed entitlement to the $350,000 second installment payment from Merloni to Equator as a creditor due to its summary judgment against Equator.

On February 9, 2006, Vir, represented by Riga, filed an answer and plea in intervention in the *Soe* suit. Vir confessed judgment on behalf of "John Doe I" in the amount of $262,500 in favor of the fictitious "S. Soe" (*i.e.*, Frankoff). Riga drafted checks totaling $196,875 to Frankoff and $65,625 to Norman (Funds).[9] Riga gave the checks to Norman. Norman cashed her check that day and told Frankoff she had a check for him. On February 10, Frankoff met Norman at her office, and they went together to Riga's bank to cash Frankoff's check. Frankoff claims that he gave Norman another $116,625. According to Frankoff, while they were at the bank, Norman convinced him that he owed her more money and demanded that Frankoff negotiate his $196,875 check in front of her. She purportedly took $50,000 in cash from him, explaining that he owed her

MetroBank's claims.

[7] Appellee Easton, in a purported email to Vir, referred to the *Soe* lawsuit as a "lawsuit filed under aliases to keep MetroBank out of the loop."

[8] A deposition of Norman taken in March 2009 during a suit brought against Norman by the Commission for Attorney Discipline reveals several concerning facts: (1) Norman resided in a house leased from Maria Easton, appellee Easton's wife; (2) Norman shared an office with Peter Riga and claimed appellee Easton was a "consultant" working for her; and (3) Norman stated she was representing Riga in another matter at the same time as he was her opposing counsel in the *Soe* suit.

[9] The Funds were paid from an IOLTA trust account. The check to Norman constituted her alleged fee for representing Frankoff. Norman's check amounts to 25% of the $262,500. Norman testified in her deposition in another lawsuit that Riga told her when he gave her the checks that Equator had filed for bankruptcy. Norman and Frankoff nevertheless cashed their checks.

40% of the $262,000 relinquished by Vir as her fee for representing him in the *Soe* case. Frankoff contends that there was no signed and executed fee agreement.

The bankruptcy trustee filed an adversary proceeding pursuant to 11 U.S.C. § 549 seeking avoidance of the post-petition transfers to Frankoff and Norman.[10] The bankruptcy court granted the trustee's motion for summary judgment, holding that the Funds were property of the bankruptcy estate and subject to avoidance and recovery. Frankoff and Norman appealed to the United States District Court, where they argued that the Funds were not "property of the estate" because they were paid to Frankoff as a result of his contingent fee agreement, under which Equator purported to grant Frankoff "a lien on any proceeds." The district court affirmed the bankruptcy court's decision, but noted in its "Memorandum and Order":

> The Bankruptcy Court's ruling that the funds are property of the estate is not a decision on the merits of Frankoff's (and derivatively Norman's) entitlement to the funds paid to them, or on their right to other settlement monies that Frankoff transferred to Riga's trust account. The Bankruptcy Court did not decide whether Frankoff had a valid lien on the settlement funds [or] the priority of any lien Frankoff may have . . . .

In January 2008, the Fifth Circuit affirmed the district court's decision.

Norman settled with the bankruptcy trustee and paid $24,000 back into the bankruptcy estate. It is unclear whether Frankoff paid any portion of the Funds he received back into the bankruptcy estate.

## PROCEDURAL HISTORY

In June 2008, Frankoff filed suit against Norman in Texas district court, alleging breach of fiduciary duty, fraud,[11] and conversion, and claiming damages of over $500,000.

---

[10] A trustee may avoid a transfer of property of the bankruptcy estate if the transfer occurred after the commencement of the bankruptcy proceeding and was not authorized by the bankruptcy court or the Bankruptcy Code. *See* 11 U.S.C. § 549(a).

[11] One section of Frankoff's petition is entitled fraud/larceny by trick. Texas does not recognize a claim for larceny by trick, but the substance of that section in the petition indicates it is a fraud claim.

4

Frankoff filed a "No Evidence Motion for Final Summary Judgment or in the alternative Partial Summary Judgment" on May 25, 2009. *See* Tex. R. Civ. P. §§ 166a(c), (i). In February 2010, Frankoff filed an amended petition that added Easton as a party, alleging Easton was a co-conspirator with Norman and therefore also liable for all of the other claims.[12] Frankoff filed a "First Amended Motion for Partial No Evidence Summary Judgment" on March 6, 2010. *See id.* § 166a(i). Norman filed a traditional motion for summary judgment on May 6, 2010. *See id.* § 166a(c).

On May 19, 2010, the trial court signed an order denying Frankoff's motion filed May 25, 2009 and amended motion filed March 6, 2010, and on July 14, 2010, the trial court granted Norman's traditional motion for summary judgment as to all claims without stating the grounds therefore.

On January 20, 2011, Easton filed a combined traditional motion for summary judgment and no-evidence motion for summary judgment. *See id.* §§ 166a(c), (i). On February 14, 2011, the trial court granted Easton's traditional and no-evidence motions for summary judgment, and in so doing, disposed of all claims. Frankoff timely filed this appeal.

## DISCUSSION

### I. Standard of Review

We review summary judgments de novo. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156 (Tex. 2004); *Raynor v. Moores Mach. Shop, LLC*, 359 S.W.3d 905, 907 (Tex. App.—Houston [14th Dist.] 2012, no pet. h.). When the trial court grants summary judgment without specifying the grounds, we affirm if any of the grounds presented are meritorious. *Raynor*, 359 S.W.3d at 907.

---

[12] Before Frankoff amended his petition, Easton intervened in the suit. Easton and Norman apparently filed a declaratory judgment action in another court several months before Frankoff filed this suit. Easton and Norman allegedly sought a declaration in that suit that they were not liable to Frankoff as a matter of law. Easton's plea in intervention here was combined with a motion to transfer venue. It does not appear from the record that the trial court ruled on Easton's motion to transfer venue.

No-evidence and traditional motions for summary judgment are distinct and invoke different standards of review. *Brown v. Hearthwood II Owners Ass'n, Inc.*, 201 S.W.3d 153, 157 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). In a no-evidence motion for summary judgment, the movant represents that there is no evidence of one or more essential elements of the claims for which the nonmovant bears the burden of proof at trial. Tex. R. Civ. P. 166a(i). Once a no-evidence motion for summary judgment is filed, the burden shifts to the non-moving party to present evidence raising a genuine issue of material fact as to the elements specified in the motion. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). In reviewing a no-evidence motion for summary judgment, we consider the evidence in the light most favorable to the nonmovant. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750 (Tex. 2003). A no-evidence summary judgment is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. *Id.* at 751. Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact. *Id.*

In a traditional motion for summary judgment, the movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997). To be entitled to a traditional summary judgment, a defendant must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). When reviewing a traditional summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Joe*, 145 S.W.3d at 157. We affirm the summary judgment if any of the theories presented to the trial court is sufficient to sustain the judgment. *Id.*

6

## II.  Argument

Frankoff raises, by this court's count, 19 "points of error"[13] that appear to address three main arguments: the trial court erred in (1) granting Norman's traditional motion for summary judgment on July 14, 2010; (2) granting Easton's no-evidence motion for summary judgment on February 14, 2011; and (3) denying Frankoff's partial no-evidence motion for summary judgment on May 19, 2010.

As discussed below, we reverse the trial court's grant of Norman's traditional motion for summary judgment and remand to the trial court for further proceedings.  We affirm the trial court's grant of Easton's no-evidence motion for summary judgment.  We overrule Frankoff's issues that pertain to the trial court's denial of his partial no-evidence motion for summary judgment because this court may not review that motion.

### A.  Norman's Traditional Motion for Summary Judgment

Frankoff's original petition in the trial court alleged causes of action of breach of fiduciary duty, fraud, and conversion against Norman.  Norman filed a traditional motion for summary judgment asserting Frankoff's claims were barred as a matter of law because Frankoff committed fraud in the inception of the contingent-fee agreement between Frankoff and Equator, Frankoff's claim to the settlement funds was previously adjudicated in bankruptcy court and thus barred by res judicata and collateral estoppel, Frankoff consented to accept the settlement funds and pay Norman, and Frankoff lacked credibility. No evidence was attached to Norman's motion.  Instead, she incorporated by reference exhibits that she apparently filed two days before filing the motion.[14]  These exhibits consist primarily of pleadings and court opinions from other cases.

---

[13] Frankoff does not number his issues, nor does his brief comply with many aspects of Texas Rule of Appellate Procedure 38.1.

[14] The record contains an exhibit list filed by Norman on May 4, 2010, but no exhibits are attached. The exhibits corresponding with the list are provided elsewhere in the record.  We presume for the purposes of our analysis that the exhibits were attached to Norman's exhibit list filed May 4.

**Fraud in the inception**.  In her motion, Norman claimed Frankoff was using Norman's legal services to perpetrate a fraud on Metrobank; thus, she claimed the contingent-fee agreement was fraudulent and "vitiate[d] any alleged misconduct" by Norman.  In response to allegations of fraud, Norman contended no attorney-client relationship had been formed between her and Frankoff and no fiduciary duty arose.[15]

To support her argument that Frankoff committed fraud, Norman relied solely on and incorporated by reference into her motion United States Bankruptcy Judge Steen's "Referral to United States Attorney, U[.]S[.] Trustee and State Bar of Texas."  The Referral contains a statement of facts based on evidentiary hearings in the bankruptcy court that set forth allegations of Frankoff's fraudulent concealment of funds and, pursuant to the court's obligation under 18 U.S.C. section 3057, refers the matter to the United States Trustee for criminal investigation.[16]  Norman also referenced testimony that Judge Steen cited in the Referral, elicited from Vir in bankruptcy court, that the original fee agreement between Frankoff and Equator called for a $25,000 flat fee.[17]  Vir apparently admitted that he and Frankoff fabricated the contingent-fee agreement purporting to pay a 40% contingent fee to Frankoff.

---

[15] Norman cited authority stating the lawyer-client *privilege* does not apply when a lawyer's services are sought to enable the client to commit fraud.  Tex. R. Evid. 503(d)(1); *Warantech Corp. v. Computer Adapters Servs., Inc.*, 134 S.W.3d 516, 527 (Tex. App.—Fort Worth 2004, no pet.).  She cited no authority supporting the proposition that fraud vitiates an attorney-client *relationship*, and we have found none.

[16] Frankoff objected to the Referral as hearsay but did not preserve error on this issue because he failed to obtain a written ruling on his objection.  *See Harris v. Spires Council of Co-Owners*, 981 S.W.2d 892, 897 (Tex. App.—Houston [1st Dist.] 1998, no pet.) (finding that, by not obtaining a written ruling, a party waives objection to hearsay evidence in the summary-judgment record).

[17] Vir's testimony is not included in our record on appeal.

8

The Referral does not constitute conclusive proof that Frankoff committed fraud. A referral under 18 U.S.C. section 3057 is made when a judge, receiver, or trustee has "*reasonable grounds for believing* that any violation . . . of laws of the United States relating to insolvent debtors, receiverships or reorganization plans has been committed, or that an investigation should be [conducted]." 18 U.S.C. § 3057(a) (emphasis added). Based on a referral, the United States Attorney is required to "inquire into the facts[,] . . . report [them] to the judge, and *if it appears probable* that any such offense has been committed . . . present the matter to the grand jury." *Id*. § 3057(b) (emphasis added). Thus, a referral is not evidence of a crime, but is based on the referree's conclusion that there are grounds supporting a reasonable belief that a crime was committed. *Id*. § 3057(a). As such, it may be based on information that is not admissible evidence to be investigated by the United States Attorney. *See In re Coral Petroleum, Inc.*, 249 B.R. 721, 725 (Bankr. S.D. Tex. 2000) (noting referral to United States Attorney was for investigation of *potential* criminal conduct). It is not proof of the allegations contained within it. *See id.*; *see also In re Guttierez*, 248 B.R. 287, 290 n.3 (Bankr. W.D. Tex. 2000) (noting bankruptcy court may not adjudicate criminal matters relating to concealment of assets belonging to bankruptcy estate but may refer matter for criminal investigation). Regardless of the merits of Norman's argument, which, as we understand it, is that Frankoff's use of Norman's legal services to perpetuate a fraud on Metrobank vitiates any alleged attorney-client relationship, for the reasons discussed above, the Referral is not conclusive proof that Frankoff committed such a fraud.

**Res judicata and collateral estoppel**. Norman argued in her motion that the fee Frankoff seeks to recover from her is property of the bankruptcy estate to which Frankoff is not entitled because her fee was part of the $350,000 settlement payment from Merloni to Equator the bankruptcy court held was property of the bankruptcy estate.[18] Thus, Norman

---

[18] Norman stated she settled the bankruptcy trustee's claim against her to recover the funds she received.

9

asserted Frankoff's claims against her were formerly adjudicated and are barred by res judicata and collateral estoppel. Norman neither included the elements of res judicata or collateral estoppel in her motion nor attempted to establish that each element of one or both of these affirmative defenses was met. *See Martinez*, 941 S.W.2d at 911 (noting defendant must conclusively establish each element of affirmative defense to be entitled to summary judgment).

To prove res judicata, Norman was required to show "(1) a prior final judgment on the merits by a court of competent jurisdiction; (2) the same parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action." *Igal v. Brightstar Info. Tech. Group, Inc.*, 250 S.W.3d 78, 86 (Tex. 2008). Assuming for argument's sake Norman presented proper summary-judgment evidence that the $350,000 settlement included her fee and was part of the bankruptcy estate,[19] she failed to present any evidence—conclusive or otherwise—of a final judgment on the merits[20] or that Frankoff's breach of fiduciary duty, fraud, and conversion claims against her were raised or could have been raised in the bankruptcy litigation.

To prove collateral estoppel, Norman was required to show "(1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action." *Eagle Properties, Ltd. v. Scharbauer*, 807 S.W.2d 714, 721 (Tex. 1990). Other than arguing her fee was part of the damages Frankoff seeks in the

---

[19] In the motion, Norman cited her "detailed chronology below set[ting] forth the specific documents which established 'whose property' was the money at issue, and Ms. Norman asserts that these prior adjudications . . . constitute collateral estoppel and res judicata as to Mr. Frankoff." The motion did not tie Norman's arguments to specific items in the chronology that would prove her point. She also cited testimony from counsel for the bankruptcy trustee that the settlement funds, including her fee, belonged to the bankruptcy estate. But she did not show how this information negated Frankoff's claims against her.

[20] In her chronology, Norman cited a partial summary judgment entered against Frankoff in the bankruptcy litigation and Frankoff's appeal of the entry of summary judgment. She did not, however, show how the judgment related to the merits of Frankoff's claims against her.

10

underlying litigation and part of the bankruptcy estate in the bankruptcy litigation, Norman did not establish that the facts Frankoff seeks to establish in the underlying case were fully and fairly litigated in the bankruptcy litigation. Similarly, Norman did not argue or present any evidence that she and Frankoff were adversaries in the bankruptcy litigation.

Accordingly, Norman did not conclusively establish as a matter of law that Frankoff's claims against her are barred by res judicata or collateral estoppel.

**Consent**. Norman averred in her motion that Frankoff agreed to take a portion of the Funds and pay Norman's fee.[21] However, Norman failed to show how such an agreement would constitute a valid defense to Frankoff's claims. Further, she did not show whether Frankoff's consent would be a defense to all or some of Frankoff's claims. Therefore, Norman did not conclusively prove that she is entitled to judgment as a matter of law on Frankoff's breach of fiduciary duty, fraud, and conversion claims.

**Credibility**. Lastly, Norman attacked Frankoff's credibility in her motion. However, credibility is a question of fact that may not be determined by summary judgment. *See City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005) (noting fact-finder is sole judge of credibility of evidence).

Accordingly, Norman did not meet her summary judgment burden to establish as a matter of law that Frankoff's claims are barred. We therefore reverse the trial court's summary judgment in favor of Norman.

## B. Easton's Combined Motion for Summary Judgment

Frankoff's amended petition filed in February 2010 added claims against Easton, specifically, that Easton conspired with Norman and was therefore jointly liable as a

---

[21] Norman referenced the following documents in support of this argument: (1) "Original Answer, Plea in Intervention, Confession and Satisfaction of Judgment" signed "As agreed to by Steven Frankoff" filed in the *Soe* litigation; (2) excerpts from Frankoff's deposition in another lawsuit quoted in the motion; (3) returned checks for Norman's fee and funds paid to Frankoff; and (4) Frankoff's appellate brief filed in the Fifth Circuit.

conspirator for all of the claims against Norman. Easton filed a combined no-evidence and traditional motion for summary judgment, which the trial court granted. Easton's combined motion was filed with the court after the court had already granted Norman's motion for summary judgment.

We first review the trial court's summary judgment under the no-evidence standard of Texas Rule of Civil Procedure 166a(i). *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). If the no-evidence summary judgment was properly granted, we do not need to reach arguments under the traditional motion for summary judgment. *See id.*

Easton's no-evidence motion for summary judgment challenged the evidence as follows:

> (1) no evidence exists that Michael Easton and Susan Norman had a meeting of the minds on an object or course of action; (2) no evidence exists that Michael Easton or Susan Norman committed an unlawful, overt act in furtherance of the alleged object or course of action; (3) no evidence exists that Michael Easton and Susan Norman were liable for some underlying tort; (4) no evidence exists that Easton or Norman made any material representation to Frankoff; (5) no evidence exists that any representation by Easton or Norman to Frankoff was false; (6) no evidence exists that when Easton or Norman made an alleged false material representation to Frankoff, Easton or Norman knew that such representation was false or made it recklessly without knowledge of the truth as a positive assertion; (7) no evidence exists that Easton or Norman made any material misrepresentation with the intention that it should be acted upon by Frankoff; (8) no evidence exists that Frankoff acted upon any material, false representation by Easton or Norman; (9) no evidence exists that Frankoff suffered injury as a result of his reliance upon any material, false representation by Easton or Norman; (10) no evidence exists that Easton or Norman failed to disclose material facts to Frankoff; (11) no evidence exists that Easton or Norman had any duty to disclose facts that were allegedly not known by Frankoff; (12) no evidence exists that Easton or Norman knew Frankoff was ignorant of facts that were allegedly wrongfully withheld from him; (13) no evidence exists that Easton or Norman were deliberately silent when either of them had a duty to speak; (14) no evidence exists that by failing to disclose some fact, Easton or Norman intended to induce Frankoff to take some action or refrain from acting; (15) no evidence exists that Frankoff relied on any alleged

12

failure to disclose by Easton or Norman; (16) no evidence exists that Frankoff was injured as a result of acting without knowledge of facts that Easton or Norman allegedly wrongfully withheld from him; (17) no evidence exists that Frankoff was entitled to possession of his allegedly "fully earned legal fee" of $350,000; (18) no evidence exists that Frankoff had a greater right to possession of the $350,000 than did the Bankruptcy Trustee; (19) no evidence exists that Easton or Norman "unlawfully appropriated" Frankoff's personal property by bringing about a transfer of title or any other non possessory interest in personal property; and (20) no evidence exists that Easton or Norman "unlawfully appropriated" Frankoff's personal property by acquiring or otherwise exercising control over the personal property.

Frankoff appears to have filed four responses to Easton's combined motion for summary judgment. The initial response, filed on February 4, 2011, did not attach any summary-judgment evidence, but instead attempted to incorporate by reference many documents.[22] On February 11, 2011, Easton replied and asserted various objections to the initial response. Frankoff then filed three supplemental surreplies on February 11, 13, and 14, in an apparent attempt to cure defects pointed out in Easton's objections. The record does not reflect that Frankoff requested or the trial court granted leave to file the surreplies.[23]

Easton's motion for summary judgment was set for written submission on February 14, 2011. The trial court granted summary judgment and sustained all of Easton's evidentiary objections on February 14. The record does not show that the trial court considered Frankoff's supplemental surreplies before granting summary judgment,

---

[22] For example, on page 19 of Frankoff's response to Easton's motion, Frankoff stated, "Norman failed to follow Frankoff's instructions because she and Easton had already devised a plan to wrongfully secure the funds for themselves and their criminal gang.[57]" Footnote 57 reads: "Response to points 1 and 2, as plead [sic] in paragraph 17 of Easton's Motion. *See* Doc. #30833712, Breach of Contract action filed by Norman."

[23] Frankoff argues, without any caselaw support, that his supplemental surreplies "related back" to the February 4 response. The surreplies did not relate back, but even if they did, Frankoff still was required to obtain leave of court to supplement his response within seven days before submission, which he did not do. *See* Tex. R. Civ. P. 166a(c); *Robnett v. Kirklin Law Firm*, 178 S.W.3d 45, 52-53 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (presuming trial court did not consider untimely supplemental response filed without leave in reversing summary judgment).

13

and Easton objected to them as being untimely. *See* Tex. R. Civ. P. 166a(c) (requiring that all responses be filed not later than seven days before the date of hearing, except on leave of court). We, therefore, presume that the trial court did not consider the late-filed responses, and thus they are not part of the summary-judgment record. *See Benchmark Bank v. Crowder*, 919 S.W.2d 657, 663 (Tex. 1996); *Envtl. Procedures, Inc. v. Guidry*, 282 S.W.3d 602, 612 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). Therefore, we consider only Frankoff's initial response filed on February 4.

Frankoff alleged Easton conspired with Norman as to all of the causes of action pleaded against Norman.[24] Easton's second no-evidence ground was that no evidence exists that Easton or Norman committed an unlawful, overt act in furtherance of the alleged object or course of action, which is one of the elements that must be shown to establish a civil conspiracy. *See Bluebonnet Petroleum, Inc. v. Kolkhorst Petroleum Co*., No. 14-07-00380-CV, 2008 WL 4527709, at *10 (Tex. App.—Houston [14th Dist.] Oct. 9, 2008, pet. denied) (mem. op.).

In his response, Frankoff repeatedly averred that he provided evidence of an unlawful, overt act committed by Easton and Norman in furtherance of the conspiracy. However, Frankoff attached no evidence to his response and merely referenced other documents. Easton asserted the following objections to Frankoff's response to Easton's summary-judgment motion: (1) Frankoff incorporated by reference his own pleadings in this suit as summary-judgment evidence, but pleadings are not competent summary-judgment evidence; (2) all documents referenced in Frankoff's response are incompetent, hearsay, and not properly authenticated; and (3) by offering voluminous summary-judgment evidence but not specifying those portions of evidence that purportedly raise a fact issue on a challenged element, Frankoff failed to offer any competent summary-judgment evidence. The trial court sustained all of these objections.

---

[24] These were breach of fiduciary duty, fraud, and conversion.

Frankoff does not assign error as to the trial court's sustaining of these objections or present argument challenging any of these objections. Because Frankoff has not challenged the trial court's evidentiary ruling, in determining whether Frankoff raised a genuine fact issue in response to Easton's no-evidence motion, we cannot consider the documents that Frankoff incorporated by reference into his response, because these documents were the subject of Easton's objections. *See Seaway Prods. Pipeline Co. v. Hanley*, 153 S.W.3d 643, 650 (Tex. App.—Fort Worth 2004, no pet.). Because Frankoff did not attach any evidence to his February 4 response, we are left with no proper summary-judgment evidence in response to a no-evidence motion. *See id.* In this context, we must affirm the trial court's grant of Easton's no-evidence motion for summary judgment. *See id.* Because we affirm this part of the trial court's judgment, we need not address the merits of Easton's traditional motion for summary judgment.

## C. Frankoff's Partial No-Evidence Motion for Summary Judgment

Frankoff complains that the trial court denied his motion for summary judgment on his breach of fiduciary duty claim against Norman, seeking fee forfeiture.[25]

Generally, a party may not seek appellate review of the trial court's denial of a motion for summary judgment because it is an interlocutory ruling and not a final judgment. *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625 (Tex. 1996); *United Parcel Service, Inc. v. Cengis Tasdemiroglu*, 25 S.W.3d 914, 916 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). No exceptions apply in this case that would allow Frankoff to seek review of the trial court's denial of his motion. We overrule Frankoff's issues pertaining to the denial of his motion for no-evidence summary judgment on his breach of fiduciary duty claim against Norman.

---

[25] The ground for his motion was that Norman could not show fairness of her transaction with Frankoff.

15

## CONCLUSION

We reverse the trial court's grant of Norman's traditional motion for summary judgment and affirm the trial court's grant of Easton's no-evidence motion for summary judgment. We overrule Frankoff's issues pertaining to the denial of his motion for no-evidence summary judgment on his breach of fiduciary duty claim against Norman. We remand to the trial court for further proceedings consistent with this opinion.

/s/        Martha Hill Jamison
Justice

Panel consists of Justices Frost, Seymore, and Jamison.